CANDLER v. ELECTRIC CO.

(Filed April 12, 1904).

JUDGMENTS — *Arbitration and Award—Former Adjudication—The Code, sec. 1859—Damages.*

In an action to recover damages for injuries by ponding water on land, the judgment set out in this case does not estop the plaintiffs from recovering permanent damages.

ACTION by T. J. Candler and another against the Asheville Electric Company, heard by *Judge W. A. Hoke* and a jury, at May Term, 1903, of the Superior Court of BUNCOMBE County. From a judgment for the plaintiffs, the defendant appealed.

*F. A. Sondley,* for the plaintiffs.
*J. C. Martin,* for the defendant.

MONTGOMERY, J. This action was brought for the abatement of an alleged nuisance, viz., a dam maintained by the defendant company across a stream below the land of the *feme* plaintiff, and to recover damages for alleged injuries done to the lands through the ponding of water on the same caused by the dam. The defendant in its answer denied that any injury had been done to the land by means of the dam, and also pleaded as an estoppel the award and judgment made in a certain action between the present plaintiffs, who were also plaintiffs there, and the West Asheville Improvement Company and J. E. Rankin and J. E. Cutler, receivers of the West Asheville Improvement Company, defendants, made at the August term, 1898, of Buncombe Superior Court. In that action the plaintiffs brought suit against the West Asheville Improvement Company for the abatement of the

same dam as a nuisance and for the recovery of damages for
injury to the same tract of land of the *feme* plaintiff caused
by the ponding of water on the land. The complaint in that
action was filed at the December Term, 1895, of Buncombe
Superior Court, and after the charter of the West Asheville
Improvement Company had been repealed by the General
Assembly and after Rankin and Cutler had been appointed
receivers of the company. At the December Term, 1897,
of that Court, by consent of all the parties, it was ordered
that the issues arising upon the pleadings be submitted to
the arbitrament and award of A. H. Felmont and George S.
Powell as arbitrators, who should, as such arbitrators, hear
the cause and examine into the matters therein involved and
determine the same; that they should find and award whether
or not the plaintiffs, or either one of them, were entitled to
any damages from the defendant, or any of them, and if
so, what damages, distinguishing in so doing between dam-
ages by reason of permanent injuries to the land described
in the complaint, if any such they should find, and annual
damages if any such they should find for the period of five
years from and after September 1, 1893; and it was further
ordered that the award of the arbitrators should be the rule
of the Court, and that judgment should be rendered thereon
for said permanent damages and, as under the mill-dam act,
for said annual damages for five years as aforesaid. At the
August Term, 1898, of the Superior Court the arbitrators
reported an award in the following words: (1) "They assess
the permanent damage of the plaintiffs to this date, to their
lands described and referred to in the complaint in this cause,
at the sum of $500, including interest. (2) They find and
award that the plaintiffs have suffered an annual damage of
$235.20 per annum, including interest, for five years, begin-
ning September 1, 1893, making a total damage for said
period of five years on account of loss of crops on said lands

the sum of $1,176. This makes the total damages assessed by us herein $1,676. And your arbitrators further award that said sums are to bear interest from the filing of this award until paid."

And at the same term judgment was rendered upon the award for the sum of $1,676, the amount of the damages aforesaid so sustained by the plaintiffs as above set forth, with interest on the same at the rate of six per centum per annum from August 17, 1898, until paid: the said sum being the damages so sustained by the plaintiffs as aforesaid, the sum of $500 as permanent damages up to August 17, 1898, sustained by the plaintiffs to their lands described in the complaint in this action by reason of the matters therein complained of, and the additional sum of $1,176, the total of the annual damages sustained additional to said permanent damages by the plaintiffs to their said lands by reason of the matters so complained of during said five years commencing September 1, 1893, which said annual damages amount to the sum of $235.20 per year for every year of the said period of five years, beginning September 1, 1893, and continuing until the expiration of five years.

The judgment contained this further provision: "And it is further ordered and adjudged that execution issue upon this judgment, and this judgment shall be and is subject to the provisions of chapter 43 of the first volume of The Code of North Carolina, and in particular to the provisions of section 1859 of said Code of North Carolina, and for that purpose this cause is retained upon the docket for further proceedings, orders, judgments and decrees; and the question of the abatement of the dam mentioned in the pleadings in this action as a nuisance and of injunction in regard thereto is, accordingly, hereby reserved until return of execution hereon to be determined upon the pleadings in this action; and the record herein, the admissions and allegations

in them contained, the orders herein, said award, this judg-
ment and the matters determined or found or both by or in
it, and upon such further evidence as may be hereinafter
adduced and finding as may be hereafter in this action had, in
accordance with the law and course of practice of this Court
and consistent with them."

The judgment record in that case showed that the judg-
ment was paid off in full on September 19, 1898, by the
Asheville Electric Company, the defendant in the present
action. In the present action two issues were submitted to
the jury by the Court, the first one in these words: "Has
there heretofore been an arbitration and award and satisfac-
tion concerning the dam and injuries caused thereby between
the parties to this action, and on what terms?" and the sec-
ond was, "What is the entire damage, permanent and pros-
pective, wrongfully done to plaintiffs' land by defendant's
dam occurring since September, 1898, the dam to remain
out or reduced to the height of the original Shuford or Ste-
phens dam?" The jury answered the first issue "Yes," and
"The terms are as shown in the record presented." And they
answered the second issue, "Permanent $100, rental $600,
total $700," and judgment was rendered accordingly against
the defendant. The record referred to in the verdict of the
jury was the record in the case of the plaintiffs against the
West End Asheville Improvement Company and Rankin and
Cutler, receivers, and which record we have referred to suffi-
ciently already for the purposes of this opinion.

That the second issue may be understood, it is necessary
for us to state that the Shuford or Stephens dam was erected
over forty years ago on the same spot where stood the dam
which was erected by the West End Improvement Company
of Asheville in 1892, and which the defendant in this
action maintained after August, 1898. The Stephens or Shu-
ford dam was fourteen feet high and was used to store water

for an ordinary country grist-mill, and the dam maintained · by the defendants, and as it was erected by the West End Asheville Improvement Company, was thirty feet high, used for the purposes of storing water to furnish an electric plant.

The defendant appealed from the judgment. Its main contention is that the award and judgment in the action which was commenced by the plaintiffs against the West End Asheville Improvement Company and Rankin and Cutler, receivers, were in meaning and effect an award and judgment for permanent damages—damages for past, present and prospective injury—and equivalent to a purchase of the easement to pond water on the plaintiffs' land; and that therefore the plaintiffs are estopped from claiming damages of any nature against the defendant in this action because of the purchase by the defendant from Cutler and Rankin, receivers of the West End Asheville Improvement Company, of all the property of that company, including the dam and site of the mill. The other contention of the defendant is that if the judgment in this action is not a complete bar to the plaintiffs' right·of recovery, it is as a bar to the recovery of all damages except such as were suffered by the plaintiffs on account of additional injuries or injuries to additional lands of the plaintiffs after September 1, 1898; or, to put it in other words, if there had been no increased injury to the plaintiffs' land afterwards, the plaintiffs could recover nothing in this action, because the former award and judgment gave the right to the defendant, as purchaser from the receivers, to maintain the dam as it was at the time of the award without being liable to any further damages.

In the trial below the Court was of the opinion that neither of the defendant's contentions could be upheld. His Honor instructed the jury, in substance, that the award and judgment did not amount to the purchase of the easement to pond the water, nor to a condemnation of the land; that the award

CANDLER *v.* ELECTRIC CO.

having provided for all present and current damages to the land up to September 1, 1898, would preclude all damages to that date on the assumption that the defendant would then remove the dam or reduce it to the height of the old Stephens dam; and the true rule of damage was for the jury to assess all damages, past, present and prospective, which had occurred since September 1, 1898, comparing the land, not with the condition it was in originally, but with the condition it would have been in had the defendant taken out the dam or reduced it to fourteen feet, the height of the original Stephens dam.

The Court further instructed the jury on the rule of damages applicable to the case, as follows:

"Award both permanent damage, if any occurred since September 1, 1898, permanent destruction of the land or injury to it causing loss of productive capacity, and also current damages, loss of rents and profits, if any, caused by any increase in area injuriously affected and by delay in reclaiming the land because the dam was not lowered or removed on September 1, 1898. Language of issue is both present and prospective and the jury will award damages, if they find such, of both kinds that may have accrued since September 1, 1898, or which will accrue from the dam or delay in taking it out."

We find no error in the view which his Honor took of the case, or in the instructions which he gave to the jury. It is clear from the language of the award, and the judgment which followed thereon, in the suit of the plaintiffs against the West End Asheville Improvement Company, that permanent damages in the sense which that term is used in *Ridley v. Railroad,* 118 N. C., 996, 32 L. R. A., 708, and in *Parker v. Railroad,* 119 N. C., 677, were not meant to be fixed or allowed in that action. In the two just above-mentioned cases permanent damages meant such damages as were

135—2

apparently to be continuous and prospective, because being permanent and likely to continue indefinitely as the natural effect of that cause.     But there is another kind of permanent damage referred to in *Beach v. Railroad,* 120 N. C., 498, as damage done by one act, or all at once, such as the destruction of forests or an orchard, or the demolition of a house, and such must have been the damages assessed as permanent under the arbitration referred to.     Anyway, it did not embrace permanent damages in the sense that those words were used in Ridley's and Parker's cases, *supra.*     Because they were assessed, not for prospective damages, but up to a specified period, to-wit, September 1, 1898.     The assessment of the annual damages under the arbitration for the five years preceding September 1, 1898, was, according to the award and judgment, to be treated as assessed under the mill-dam act, chapter 43 of The Code; and the damages sought to be recovered in the present action were therefore to be considered in connection with the condition of the land as it would have been in case the defendant had removed the dam at the time of the award or reduced it to the height of the Stephens dam according to the instructions of his Honor.     The defendant acquired no easement to pond the water on the plaintiffs' land under the award of 1898, and there was no purpose to condemn the land under that arbitration and award.     It is not necessary from the view we have taken of the case to discuss the other questions raised by the appeal.

Affirmed.