BROWN v. POWER CO.

(Filed December 15, 1905).

*Eminent Domain—Compensation—Market Value—Special Value to Owner— Water Power— Evidence— Impeachment of Witness—Instructions—Easement for Right of Way—Additional Burden—Verdict—Power of Court.*

1. On an issue as to the market value of plaintiff's land, where a witness had testified as to the sales of upland lands in the neighborhood before the installation of the water plant, it is not competent to ask him "if the erection of the plant had not increased the value of lands 'down there,'" for the purpose of impeaching him.

2 The court is not required to give an instruction in the language of the prayer, but it is sufficient if the instruction given covers the principle involved.

3. When, for the purpose of meeting and providing, for a public necessity, the citizen is compelled to sell his property or permit it to be subjected to a temporary or permanent burden, he is entitled by way of compensation, to its actual market value.

4. The market value of property is the price which it will bring when it is offered for sale by one who desires, but is not obliged to sell it, and is bought by one who is under no necessity of having it. In estimating its value all the capabilities of the property and all the uses to which it may be applied or for which it is adapted may be considered and not merely the condition it is in at the time and the use to which it is then applied by the owner.

5. If a tract of which the whole or a part is taken for a public use, possesses a special value to the owner, which can be measured by money, he is entitled to have that value considered in the estimate of compensation and damages.

6. The court properly submitted to the jury the evidence tending to show that plaintiff had water power on the river to be considered as an element of value.

7. The condemnation for the purpose of building and operating a railroad did not deprive the plaintiff of the use of her land except to the extent that it was necessary for the operation of the road. For any additional burden she was entitled to compensation to be measured with reference to the limited easement of the railroad.

8. This court has unquestioned power to set a verdict aside when there is no evidence to support it.

9. When there is any evidence proper to be submitted to the jury, this court has no power to interfere with the verdict.

10. An essential and elementary condition precedent annexed to the exercise of the power of eminent domain is that the owner of the property, who is compelled to surrender it, shall have full compensation.

ACTION by Mary Brown against W. T. Weaver Power Co., heard by *Judge T. A. McNeill* and a jury, at the February Term, 1905, of the Superior Court of BUNCOMBE.

Plaintiff alleged that she was the owner in fee of a tract of land lying on the French Broad River in Buncombe County, a particular description of which is set forth. That she resided with her family on said land, cultivating a portion thereof. That the defendant company had erected and maintained a dam across said river in the vicinity of and below said land by which the water was thrown back and ponded said land near to her residence. That by reason of said dam her land is flooded and damaged and that, so long as the said dam is maintained, such injury and damage will continue; that by reason of said ponding, etc., the value of her land is diminished and that she will continue to suffer in comfort and convenience, and in the destruction of her water power and of a valuable spring on her premises. That by ponding the water above said dam, the defendant has taken possession of a part of said land and wrongfully withholds the same from her. She demands judgment for the possession of the portion of land so withheld. She also demands judgment for

permanent and annual damage.  The defendant by way of answer admits that it has erected and maintains the dam as alleged.  Denies the plaintiff's ownership of the land and the damages alleged to have been sustained, etc.  For a defense it avers that it is a corporation duly chartered pursuant to the laws of the State, the charter being properly pleaded. That it has constructed and has now in operation a large and expensive dam across the French Broad River and a large plant with expensive machinery and is engaged in furnishing electric power to the public lights in Biltmore, and operating the street railway system, and lights in the city of Asheville, certain cotton mills and other manufacturing plants.  That in order to carry on this business it was and is necessary to erect and maintain across the French Broad River a dam to collect water and to operate such plant and machinery; that the portion of the lands described in the complaint situated between the road bed of the Southern Railway and the western banks or margin of the said river is necessary and is required by the defendant for the purpose of constructing and operating its works; that it has made several efforts to agree with plaintiff upon a price for the said lands, etc.  Defendant insists that by its charter the right to condemn said land to its use is conferred and that plaintiff's remedy is confined to the procedure provided in the charter, etc.  The following issues were submitted to the jury:

"1. Is the plaintiff the owner and entitled to the possession of the lands and premises described in the complaint?  Ans. Yes.

"2. Was the land of plaintiff injured by the erection of the dam, as alleged in the complaint?  Ans. Yes.

"3. What permanent damage, if any, has the plaintiff sustained by reason of the erection of said dam and the ponding and backing of said river, as alleged in the complaint?  Ans. $750.

"4. What annual damage, if any, has the plaintiff sus-

tained by reason of the erection of said dam and the ponding and backing of said river, as alleged in the complaint? Ans. $150."

The court reduced the amount assessed for permanent damage to $625. Defendants moved the court to set aside the verdict. Motion denied. Judgment was signed and defendant excepted and appealed.

*Mark W. Brown* and *Zeb V. Curtis* for the plaintiff.
*Davidson, Bourne & Parker* and *Tucker & Murphy* for the defendant.

CONNOR, J., after stating the facts: There was evidence tending to show the location of plaintiff's land, the location of the dam and the effect upon the land by water ponding thereon, etc, in regard to its productive capacity, the crops raised upon it before and after the erection of the dam. There was also evidence tending to show that the quantity of land upon which water was ponded was about three acres; the rental value of the land; the effect of the water ponded on the land by the dam upon the health of plaintiff's family, etc. The testimony in all of these aspects was conflicting. The estimate of the value of the land and its rental value indicated great divergence of opinion. Only such portions as relate to the exceptions need be noticed. Several of the exceptions to the rulings of His Honor upon the admission of testimony were not pressed in this court.

Mr. Ingle, a witness for the plaintiff, testified in regard to the value of real estate, etc. Upon cross-examination he stated that he had sold some worn out upland in the neighborhood of plaintiff's land for $30 and $50 an acre, giving the location of the land; that the sales were made before the installation of the water power. Defendant thereupon proposed, upon cross-examination, to ask him if the erection of defendant's plant had not increased the value of the land

"down there." The question was, upon objection, excluded and defendant excepted. Defendant's counsel concedes that this testimony was not competent for the purpose of offsetting against plaintiff's damage any benefit that may have accrued to her land by the erection of the plant, but states that his purpose was to impeach the witness and lessen the weight of his testimony in regard to value of lands. We are not quite sure how the testimony in regard to the sale of other lands in the vicinity of the plaintiff's, unless it was shown that in respect to the conditions, etc., they are similar, was relevant. The question in issue was the market value of the plaintiff's land. It seems that witness had given his opinion that it was worth $100 per acre. The defendant was permitted, without objection, to show that he had sold lands in that vicinity—worn out, and upland—at a smaller price; that such sales were made since the installation of the plant. We do not perceive how it would tend to impeach him to show that the erection of the plant had increased the value of lands "down there." The time of the sale, in respect to the erection of the plant, was shown; this enabled the jury to draw such reasonable inferences from the facts as were proper in estimating the weight to be given to his evidence in regard to the value of plaintiff's land. The exception cannot be sustained.

Plaintiff testified that her land between the river and the railroad is submerged all the year, that there is but a small portion over which a person can walk—that this was caused by the dam. That no part of the three acres was fit for agricultural purposes or pasturage now; that the erection of the dam had ruined her spring, which formerly afforded good water; that she has no other water. She testified that noxious odors came from the river, caused by ponding the water; that sickness, fevers, etc., had prevailed. She said that "before the dam was made this place was her home, and she was happy at it and could have made her support out of the bottom, and now she has no good water and no support,

and it rendered her unhappy and she did not have her health this summer, and before she had always had her health; that through the wet weather one of the houses on the place had its walls moulded, and that her things got so damp and bad that they moulded in her trunk; that they had filled the yard up trying to prevent it; that it was not that way before the dam was built, and that there was no unpleasant odor before the dam was built." There was evidence tending to show that plaintiff had an orchard on the land from which she gathered and sold fruit and that since the erection of the dam the trees had died; that she raised vegetables for market on the three acres, etc. The testimony in regard to the value of the orchard, fruit, etc., was conflicting. Mr. Hawkins testified that the three acres between the railroad and the river, if used for gardening purposes, would be worth about $100 per acre and that included the orchard; that he had run a mill all of his life and if plaintiff had a water power in front of her place before the erection of the dam, it would be worth about $500 an acre at least, and it would be worth that much on the French Broad anywhere that you could put up water power nearly. He also testified in regard to the effect of the water ponded upon the land on the orchard—that the trees were dead and that it was not worth anything for gardening, or agricultural purposes. That he never measured the fall of the river from plaintiff's south line to her north line before the erection of the dam, but he guessed it was about 3½ feet; that he looked over it, but never measured it. He was examined at much length in respect to the flow of the water, etc. He testified that in forming his estimate of the value of the land he did not know that it was all subject to the right of way of the Southern Railway; that the fact that this land was subject to an easement of the railway company would affect its value after they took possession of it because you could not farm there, but it would not affect its present damage; that it would not affect

it unless the company built a house there, or took permanent possession of it.   Defendant introduced Mr. Stepp, who said that he was familiar with the land—passed it frequently, thought it worth for agricultural purposes $50 per acre; that the people asked a good deal more than that for it, but that was as much as it was worth for purpose of general farming.

Mr. Weaver, president of the defendant company, testified in regard to water power on the French Broad.   That the fall from plaintiff's southern to her northern line was exactly 8¾ inches; that above this property for 1900 feet there is an eddy or pool in the river; that is, there is a swag there, etc.; that from his knowledge of water powers and what it takes to make them commercially valuable, if the defendant's dam had not been built, the whole fall on plaintiff's property would have been of no value and could not have been utilized; that 8¾ inches from a slight rise in the river would be wiped out and a wheel to give speed under such a fall would have to be an enormous affair.   He testified at much length in regard to the power, concluding with the statement that it would be commercially impossible to develop 8¾ inches fall on the French Broad River, giving his reasons for the opinion, etc. He also testified in regard to the damage sustained by plaintiff in other respects.   Defendant introduced several other witnesses, whose testimony in regard to the river, the fall, etc., tended to sustain its view and contention.   Plaintiff introduced witnesses in reply.

At the close of the evidence defendant submitted certain prayers asking special instructions.   Those which were pressed in this court are:   "The court charges the jury that they cannot be influenced in this action by any sentimental considerations which might arise from the fact that this was plaintiff's home, that she was satisfied with it and did not care to sell the three acres of her land lying between the railroad and the river, nor will the jury be influenced by what plaintiff would charge for her land or was willing to take for

her land, except in so far as this consideration throws some light on the true value of the said land and the extent of the injury thereto resulting from the erection of defendant's dam."

His Honor declined to give this instruction. Defendant excepted. He instructed the jury upon the issue in regard to permanent damage, that the burden was on the plaintiff to show what permanent damage she had sustained, and that in passing upon the evidence they would take into consideration all the evidence tending to show the ponding or obstruction of the water of the stream; the extent to which the plaintiff's land was overflowed and damaged by the water ponded by the erection of the dam, if caused by its erection. "You will take into consideration the testimony tending to show that the land was rendered unfit for agricultural or gardening purposes; the quantity of it so injured, the injury or destruction of the apple orchard, injury to the spring, if any; you will take also into consideration the evidence tending to show that plaintiff had water power on the river, and that of the defendant tending to show that her water power, if there, was of no commercial value, and if there, upon the whole circumstances and all the testimony, you will determine its value, if you are of the opinion that it has value; taking into your estimate also in fixing the damages on this issue the evidence tending to show that the land of the plaintiff was subject to the right of way or easement for railroad purposes, or that a portion of it was; and you will also take into consideration, if you find from the testimony and by the greater weight of the evidence, that the plaintiff's land was injured and that the injury and damage was caused by the erection of the dam, and you further find that this injury and damage continues, then you will ascertain what the injury and damage from the erection and maintenance was, and the amount you reach will be your answer to the issue."

In conclusion His Honor said to the jury: "You are not to

be influenced by sympathy on the one side or by prejudice or bias on the other side, if any such exist. The true measure of damages in this case is the difference in the value of the land of the plaintiff that is effected by the flowage or ponding back of the water, arising from the erection of defendant's dam in its condition just prior to the erection of said dam and its value in its condition just after the erection of said dam. That the burden of proof is on the plaintiff in this case and she must establish by a preponderance of the evidence not only the fact that her lands have been damaged, but also that such injury was due to the erection of defendant's dam, and she must also establish by like preponderance of the evidence in what amount said lands have been damaged before she can recover in this action."

While we find no proposition of law in the instruction asked which is not correct, we think that His Honor's instruction in respect to the manner in which the jury should consider the evidence pertaining to the permanent damage and the measure of such damage covers the principle involved in the instruction. It is too well settled to require or justify the citation of authority that the court is not required to give the instruction in the language of the prayer. It is well settled that when, for the purpose of meeting and providing for a public necessity, the citizen is compelled to sell his property or permit it to be subjected to a temporary or permanent burden, he is entitled by way of compensation, to its actual market value. Lewis on Em. Domain, sec. 478. The difficulty arises not so much in fixing the standard of the right, as in ascertaining what elements or factors may be shown in applying the standard. Certainly where by compulsory process and for the public good the State invades and takes the property of its citizens, in the exercise of its highest prerogative in respect to property, it should pay to him *full compensation*. The highest authorities are to that effect. "The market value of property is the price which it will bring

when it is offered for sale by one who desires but is not obliged to sell it, and is bought by one who is under no necessity of having it. In estimating its value all the capabilities of the property and all the uses to which it may be applied or for which it is adapted may be considered and not merely the condition it is in at the time and the use to which it is then applied by the owner." Lewis Em. Dom., *supra.* *Mr. Justice Field* in *Boom Co. v. Patterson,* 98 U. S., 403, says: "In determining the value of land appropriated for public purposes, the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such cases must be what is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted; that is to say, what is it worth from its availability for valuable uses. Property is not to be deemed worthless because the owner allows it to go to waste, or be regarded as valueless because he is unable to put it to any use. Others may be able to use it. Its capability of being made thus available gives it a market value which can be readily estimated." In *L. R. Junction Ry. v. Woodruff,* 49 Ark., 381 (4 Am. St. Rep., 51), it is said: "Since then, the market value is the true criterion of damages, we are led to inquire—what is the market value? The word market conveys the idea of selling and the market value, it would seem to follow, is the selling value. It is the price which an article will bring when offered for sale in the market. It is the highest price which those having the ability and the occasion to buy are willing to pay." Referring to the range which the testimony may take in ascertaining the market value, the court says: "As a general guide to the range which the testimony should be allowed to assume, we think it safe to say that the land owner should be allowed to state, and have his witnesses state, every fact concerning the property which he would naturally be disposed to adduce in order to place it in

an advantageous light if he were attempting to negotiate a sale of it to a private individual. On the other hand, the jury and the opposing counsel, for the information of the jury, should be allowed to make every inquiry touching the property which one about to buy it would feel it to his interest to make."

"If a tract of which the whole or a part is taken for a public use, possesses a special value to the owner, which can be measured by money, he is entitled to have that value considered in the estimate of compensation and damages." 15 Cyc., 724; Cooley Const. Lim., secs. 567-8. Plaintiff testified without objection that she could have rented the bottom land for $100 and had been offered that sum; that she depended upon it for her sole support and would not have taken less than $100 a year for it. This last testimony, considered with what preceded it, was certainly competent to be considered by the jury in ascertaining its value. She also said that it was her home and she was happy then with her spring of good water—and that she could make her support out of the bottom. That she did not have her health and was unhappy by reason of it. We do not understand that, under the instruction of His Honor, the jury gave her compensation for the disturbance of her happy condition before the march of progress and the demands of a large city for water and lights deprived her of her bottom land and her spring. As said in *Boom Co. v. Patterson, supra:* "So many and varied are the circumstances to be taken into account in determining the value of property condemned for public purposes, that it is perhaps impossible to formulate a rule to govern it in all cases." The instruction given the jury for their guidance conforms to the rule approved by the authorities. The defendant requested His Honor to charge the jury: "If the jury should find as a fact that the plaintiff had not used or developed and had not intended to use or to develop any water power which she might have had on

her river front, then they cannot consider the alleged destruction of such power as an element of damages in this case. That the jury cannot consider the value of plaintiff's property as a part of the water power system of the W. T. Weaver Power Company in estimating the damages occasioned by erection of defendant's dam, but only in its former condition and the difference in value between the land in its former condition and its value in its condition immediately after the erection of the dam." To the refusal to give this instruction defendant excepted. In this connection it appears in the case on appeal that at the conclusion of the charge: "Counsel for defendant requested the court to caution the jury that they should not consider the 8¾ inches of water power of plaintiff as a part of a great system, as argued to them by plaintiff's counsel. His Honor, in response, said to the jury that they would take into consideration the water power on the one side and the easement on the other, and say upon the whole evidence what it is worth." To this defendant excepted. It is said in defendant's brief that testimony in regard to the value of the water power as a part of the Weaver power, as a system or whole, was excluded. The testimony sent up does not disclose the ruling upon this point and we are not quite sure that we comprehend the extent of it. It is further stated in the brief that plaintiff's counsel in the course of his argument, read to the jury a case bearing upon the question and attempted to apply the law as therein decided to this case—that the attention of the court was called to the argument and he said that he could not prevent counsel from arguing the law to the jury. The judge was requested to caution the jury when he came to charge them. The action of His Honor in that respect was as set out in the record. The question raised by the request for special instruction, although not very clearly presented by the testimony, is whether the jury should, in arriving at the plaintiff's compensation, consider the manner in which the

water flowed through and over her land as it related to and
connected with the flow over the defendant's lands, as con-
stituting water power capable of use and development.  The
defendant's contention stated in the brief is: "If plaintiff did
not have a water power along her river front which could be
independently developed, and had not set about acquiring
rights which would enable her to combine her water power
with that of other riparian proprietors along the river, at
the time of the erection of the dam, she was not entitled to
damages for any alleged destruction of her water power."
This contention presents an interesting and, as applied to the
condemnation of property, an important question.  The rule
is thus stated by Mr. Lewis: "The market value of property
includes its value for any use to which it may be put.  If,
by reason of its surroundings, or its natural advantages, or its
artificial improvements, or its intrinsic character, it is pecu-
liarly adapted to some particular use, all the circumstances
which make up this adaptability may be shown and the fact
of such adaption may be taken into consideration in estimat-
ing the compensation.  Some of the authorities hold that its
value for a particular use may be proved, but the proper
inquiry is, what is its market value in view of any use to
which it may be applied and of all the uses to which it is
adapted."

The question was presented in *San Diego Co. v. Neale,* 78
Col., 63 ; 3 L. R. A., 83, in which it was sought to condemn
land for the purpose of a reservoir.  · It was insisted that the
value of the land as a reservoir site should not be considered
because there was no practicable site for a dam on the land,
the only way in which it could be so used being in connection
with plaintiff's land.  The court disposed of the objection
by saying: "While it is true that defendant's land had no
value for reservoir purposes except in connection with the
land of the plaintiff, it is equally true that the plaintiff's
land had comparatively little value for such purposes except

in connection with the land of the defendant.   *   *   *
Suppose, for illustration, that the two sides of a canon suit-
able for reservoir purposes were owned respectively by two
persons who are joined as defendants in a proceeding to con-
demn the land by a water company which did not own any
of the property. It would not be pretended that such com-
pany could take the property at its value for grazing or agri-
cultural purposes merely because it was owned by different
persons.   *   *   *   Now, there is no difference in principle
between such a case and the one where the company itself
owns half the canon and is seeking to acquire the other
half. Nor is there any difference in principle where the
company owns somewhat more than half, or the more valu-
able portion. The logical result of the argument for the
appellant is that if the company owned but a small portion
of the canon, it could acquire all the rest, without regard to
the value for the only purpose for which it might have much
value, merely because the other party did not own the whole
and had not been able or did not choose to go into the busi-
ness themselves." This case was followed in *Alloway v.
Nashville,* 88 Tenn., 510; 8 L. R. A., 123. In *Boom Co. v.
Patterson, supra,* the question was whether the adaptability
of certain islands in the Misissippi river for boom purposes
should be considered in estimating their value. The court
held that it was a "circumstance which the owner had a
right to insist upon as an element in estimating the value
of his lands." The same contention was made, as in this
case, that the charter conferred upon the company the priv-
ilege of erecting its boom at the place of its location and this
prevented the defendant from utilizing his lands for that pur-
pose. In reply to the argument, the court said: "The con-
tention on the part of the plaintiff in error is that such adapt-
ability should not be considered, assuming that this adapta-
bility could never be made available by other persons by rea-
sons of its supposed exclusive privileges; in other words, that

by the grant of exclusive privileges to the company, the owner is deprived of the value which the lands, by their adaptability for boom purposes, previously possessed, and therefore should not now receive anything from the company on account of such adaptability upon a condemnation of the lands. We do not think that the owner, by the charter of the company, lost this element of value in his property." *Goodwin v. C. & W. Canal Co.,* 18 Ohio St., 169; *Young v. Harrison,* 17 Ga., 30. The president of the defendant company testified that the plaintiff's land between the railroad and the western bank of the river was necessary to the operations of the company. While there is no direct evidence of its value as a part of the water power, the defendant had the benefit of the testimony of experts that in no point of view was it of any commercial value. His Honor simply submitted the question to the jury to be considered as an element of value. We find no error in his ruling in this respect. In regard to the effect of the easement owned by the Southern Railway over the land, the court expressly told the jury to consider it in estimating the damages. This was proper. *Forbes v. Commissioners,* 172 Mass., 289. The condemnation for the purpose of building and operating a railroad did not deprive the plaintiff of the use of her land except to the extent that it was necessary for the operation of the road. For any additional burden she was entitled to compensation to be measured with reference to the limited easement of the railroad. *Blue v. Railroad,* 117 N. C., 644; *Phillips v. Telegraph Co.,* 130 N. C., 513; *Hodges v. Tel. Co.,* 133 N. C., 225.

The defendant strongly urges upon us the exception to His Honor's refusal to set the verdict aside. There can be no controversy in respect to the power and duty of this court to set a verdict aside when there is no evidence to support it. *Whitted v. Fuquay,* 127 N. C., 68. It is equally well settled that when there is any evidence proper to be submitted

to the jury, this court has no power to interfere. Whether there is such evidence is a question "of law or legal inference." This question, we must, in the discharge of our constitutional duty, pass upon and decide. Const., Art. IV, sec. 8. The defendant's exception assumes that the jury, in estimating the value of the land and the damages, were confined to the rental value for agricultural purposes. As we have seen, other elements of value enter into the estimate and were submitted to the jury. There was competent and legal evidence fit for their consideration in regard to these matters. If the defendant desired more specific instructions in respect to the evidence, it should have asked for them. We are impressed with the language of the court in *Railroad v. Woodruff, supra,* in disposing of a similar motion. "This is a delicate duty in any case, and especially so in a case when the sole issue is one as to value. This is so peculiarly within the province of the jury; it is a matter in which we can act with so little intelligence or satisfaction, and there is so little finality about any judgment we could render on this point, that nothing but an extreme case would justify our interference. If there was no evidence to support the verdict, we would not hesitate to exert our authority to set it aside. It must be very seldom, however, that the verdict is entirely unsupported by evidence in a case where there is but a single and simple issue submitted to the jury, as in this class of cases. * * * As long as witnesses differ so widely in their opinion as to values, and as long as litigants measure values so entirely by the standard of self-interest, we cannot hope for verdicts that shall be satisfactory to both parties. The utmost to which we can hope to attain is to sometimes reach a verdict that is unsatisfactory to both parties." In that case the estimates vibrated between $1,500 and $50,000; the jury fixed the value at $20,000. The attention of the writer was called some years ago to a case in which the commissioners appointed to assess the value of

land condemned for a street in a progressive town, fixed the amount at $1,250. The town authorities not being content with the assessment sent another jury to assess the value. They fixed it at $250. They were all intelligent, honest men and, with no change in conditions, reached conclusions so divergent. It sometimes occurs that appeals disclose, upon the record, verdicts which seem to be excessive, but this court has not, so far as we are informed, assumed the power to set them aside. When an erroneous rule for assessing damages is given the jury, it is our duty to direct a new trial, as in *Carter v. Railroad,* at this term. We do not find any error in this respect. The plaintiff must part with her land submerged by water thrown over it by the dam, and whatever value resided in the flow of the water, affected by the conformation of the bottom and banks of the river must be destroyed to meet a public necessity. Counsel informed us upon the argument that a very large, valuable, and to the public use, important motive power has been developed by defendant company, generating electricity which is utilized for lighting the streets and operating the street railways of populous towns and cities and the machinery of several cotton and other manufacturing plants. The State has conferred upon the company, to enable it to accomplish these beneficent results, one of the highest and most dangerous of its sovereign powers—that of eminent domain. An essential and elementary condition precedent annexed to the exercise of this power is that the owner of property, who is compelled to surrender it, shall have full compensation. His Honor in the exercise of his discretion reduced the amount assessed for permanent damages to $625. We can see no ground, as matter of law, authorizing us to disturb the verdict.

We have disposed of the case upon the theory that by suing for permanent damages the plaintiff concedes the right of defendant to acquire a permanent easement in her land. The judgment confers such easement upon defendant. She

recovers, by way of permanent damages, compensation in full therefor. It was agreed by counsel that the annual damage accruing prior to the beginning of the action, should be assessed for two years, and the judgment is drawn accordingly. When the judgment is discharged the defendant acquires an easement to overflow plaintiff's land to the extent set out in the judgment. *Ridley v. Railroad,* 118 N. C., 996; *Candler v. Electric Co.,* 135 N. C., 12.

Affirmed.