## APPROPRIATION OF LAND FOR PARK PURPOSES.

Circuit Court of Cuyahoga County.

FRANK SEITHER ET AL V. CITY OF CLEVELAND.*

Decided, December 17, 1909.

*Appropriation—Remaining Lands—Measure of Damages.*

1. In an appropriation case, where the defendant owns land on both sides of a railroad and the corporation appropriates all he owns on one side of the railroad, it is for the jury to say whether the land on the other side of the railroad is such "remaining portion" of the defendant's lands as to entitle him to compensation for depreciation in its value by reason of the ·taking of the land appropriated.

2. In estimating the value of land sought to be appropriated for park purposes, its adaptability for park purposes is a proper element of value for the jury to consider.

*Smith, Taft & Arter,* for plaintiff in error.
*N. D. Baker,* contra.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

The city of Cleveland having decided upon a system or plan of public parks for the use of its inhabitants by proper legislation, appropriated certain lands of the plaintiff in error. Other lands adjoining or near to these lands were some appropriated and some purchased by the city. As to those not purchased, and with the owners of which the city could not agree, proceedings were instituted in the court of insolvency of this county, to have the compensation to which the owners of the several tracts appropriated would be entitled assessed by a jury. Among those whose compensation was thus to be ascertained were the plaintiffs in error. They owned a parcel of land through which a railroad passed, the grade of the railroad being considerably lower than the surface of the adjoining land. There was a bridge over the

*Affirmed without opinion, *City of Cleveland* v. *Seither*, 86 Ohio State, 357.

railroad, uniting the land which was on opposite sides of the railroad.

The lands appropriated were wholly on the westerly side of the railroad, the easterly boundary being the line of the railroad's right-of-way. The appropriation included all of the land owned by plaintiffs in error on that side of the railroad. The plaintiffs in error sought to show that the appropriation of this land on the westerly side of the railroad would depreciate the value of the land on the easterly side and that therefore they would be entitled to have as compensation not only the value of the land taken, which was something more than nineteen acres, but a sufficient amount to compensate them for the depreciation of the value of the land which would remain on the easterly side of the track.

The language of the statute fixing the oath to be administered to the jury requires that they assess the compensation which ought to be paid to the property owner for the land appropriated and, in addition thereto, ascertain how much less valuable the remaining portion of said property will be in consequence of such appropriation.

In the present case the court left to the jury to determine whether the land on the opposite side of the railroad from that appropriated, was a residue or "remaining portion" of the premises of the plaintiffs in error in such wise as to entitle them to compensation on account of its being rendered less valuable by reason of appropriation. This, the plaintiffs in error urge, was erroneous, and insist that the court should have said to the jury that such land was a "remaining portion" and that the jury should inquire how much, if any, less valuable such remaining portion was by reason of the appropriation.

There was no error on the part of the court in submitting this question to the jury. The question has frequently been before the courts and the authorities are that where lands are physically separated in such wise that it is a question whether the two parts can be used together, that question shall be submitted to the jury. See *Kossler* v. *Railroad Company*, 208 Pa. St., 50.

A more serious complaint made, however, on the part of the plaintiffs in error is that the court excluded from the jury all

evidence as to the value or fitness of these premises as a public park. Evidence had been introduced as to the fitness of these lands for a park. Such evidence, or a considerable part of it, went in under the objection of the city, and the court at the request of the city said to the jury in its charge:

"If you find from the evidence that the only demand for this property for the purposes of a public park is the demand of the city of Cleveland for that purpose, then I say to you that you must not consider any of the evidence presented in this proceeding so far as it shows the value of this parcel for such purpose. You must not consider the adaptability of this land for public park purpose at all, unless you first find that there is some general demand for the land for that purpose."

The court again said to the jury in directing them how to ascertain the compensation to be paid for the land taken:

"But you must not give too free a flight to your fancy in this regard. It is not any use that the land might be put to; there are a great number of things that it might be used for that it probably never will be used for. That can add nothing to its present value. But if there are any uses that it may be put to in the near future that are probable, reasonably probable, that affects its present market value."

It will be seen by this last quotation from the charge that the court inadvertently used the word "any" where he said "It is not any use that the land might be put to." It is clear that the court inadvertently used the word "any" in this sentence, where he meant to use the word "every." The court did not mean to say to the jury that they could not consider any use to which the land might be put to, but that that they could not consider every use to which it could be put.

However, the jury undoubtedly understood it to mean the same as though the word "every" had been used, and this raises the question raised by the prior part of the charge, given upon the request of the city.

The theory upon which the court gave this charge, and excluded from the consideration of the jury its value or fitness for the purposes of a public park, was that the owner being entitled only to a fair compensation for the property taken, could not

take advantage of the fact that the city alone wanted this property for park purposes, and that to allow the owner to have the amount to be paid to him increased because of the fact that he held a piece of land which the city *must* have, he could, so to speak, "hold up the city" and make it pay whatever price he could show it would be worth for its purpose, when it might be many times the value which it would be worth for another purpose, and the court in so charging, applied apparently the decision of the Circuit Court of Huron County in the case of *Gibson* v. *The City of Norwalk*, 13 C. C., 428. That was a case in which the city of Norwalk had appropriated certain lands to be used as a basin or reservoir for storing water for the use of the city, and the court held that the fact that the lands appropriated were especially adapted to the purpose for which the city desired to use them could not be taken into account in determining the compensation to be awarded. The first clause of the syllabus reads:

"In ascertaining the market value of land sought to be appropriated by a city for water works purposes, the fact that said lands are specially adapted for reservoir purposes is not admissible in evidence and can not be considered by the jury determining its market value."

If that is a proper statement of the law applicable to the case under consideration, it would justify the action of the court in this case in this regard and we proceed, therefore, to consider the question of whether that case should be followed.

In *Railroad* v. *Longworth*, 30 Ohio St., 108, the second paragraph of the syllabus reads (speaking of the compensation to be awarded):

"In ascertaining these amounts, the jury are to take into consideration the real value of the land taken and the diminished value to the remainder, and may for that purpose take into account, not only the purposes to which the land is or has been applied, but any other beneficial purpose to which it may be applied, which would affect the amount of compensation or damages."

And in the opinion at page 111, Judge Johnson quotes with approval the following language from the case of *The Queen* v. *Brown*, L. R., 2 Q. B., 630:

"A jury, whether the dispute be as to the value of land required to be taken by the company, or as to compensation for damages by severance, in assessing the amount to which the land owner is entitled, have to consider the real value of the land, and may take into the account not only the present purpose to which the land is applied, but also any other more beneficial purpose to which, in the course of events at no remote period it may be applied, just as an owner might if he were bargaining with a purchaser in the market."

In the case of *James Goodin et al* v. *The Cincinnati & Whitewater Canal Company et al,* 18 Ohio St., 169, the fourth paragraph of the syllabus reads (speaking of the assessment of compensation in cases of appropriation):

"The rule of valuation in such cases is what the interest of the canal company was worth, not for canal purposes merely, or for any other *particular* use, but what it was worth generally, for any and all uses for which it might be suitable."

And in the opinion, at page 181, this language is used:

"The true value of anything is what it is worth when applied to its natural and legitimate uses; its best and most valuable uses. The estimate should have been given of its value *generally* for any and all uses, and not for any particular and especially not for any inferior or inappropriate use."

In the case of *Currie* v. *Railroad Co.,* 52 New Jersey Law, 381, the fourth paragraph of the syllabus reads:

"The rule, that the special advantages of the land to the party acquiring it by condemnation shall not swell the compensation of the landowner, applies to cases where the taking, which is advantageous to the purchaser, is not pecuniarily disadvantageous to the seller. If, however, the advantageous feature is of such a nature that it has commercial value in the hands of either, then a fair estimate of such value is a proper part of the just compensation which the owner is entitled to receive."

And the fifth paragraph reads:

"The situation and surroundings of land sought for railroad purposes may impart to it a special value for such purposes generally; where such a value is shown, the owner may reap the benefit of it when compelled to part with his land by condemnation."

And on page 397, the court in its opinion uses this language:

"Under the law as thus expounded the landowner in the present case should have been permitted to produce evidence as to the situation and surroundings of his land as they existed at the time of the location of the company's route, for the purpose of demonstrating, if he was able, that there resulted to his land from these circumstances a special value growing out of the best use to which, from its situation, it was presently adapted. Guarded by the exclusion of speculative opinions upon the one hand, and of the individual advantages to the condemning agent upon the other, such a course will best secure to the owner of the lands taken that compensation for their general value which is guaranteed by the Constitution whenever private property is taken for public use."

In *Mississippi & Rum River Boom Co.* v. *Patterson*, found in the 25th Co-Operative Edition of the United States Supreme Court Reports, at page 206, the court in the fourth and fifth paragraphs of the syllabus use this language:

"4.   In determining the value of land appropriated for public purposes, the inquiry must be, what is the property worth in the market, from its availability for valuable uses, both now and in the future.

"5.   In estimating the value of the lands sought to be taken by a boom company for a boom, its adaptability for boom purposes is a proper element of value for consideration."

And in the opinion, this language is used:

"So many and varied are the circumstances to be taken into account in determining the value of property condemned for public purposes, that it is, perhaps, impossible to formulate a rule to govern its appraisement in all cases.   Exceptional circumstances will modify the most carefully guarded rule; but, as a general thing, we should say that the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may reasonably be expected in the immediate future.

"The position of the three islands in the Mississippi fitting them to form, in connection with the west bank of the river, a boom of immense dimensions, capable of holding in safety over twenty millions of feet of logs, added largely to the value of the lands.   The boom company would greatly prefer them to more

valuable agricultural lands, or to lands situated elsewhere on the river; as, by utilizing them in the manner proposed they would save heavy expenditures of money in constructing a boom of equal capacity.   Their adaptability for boom purposes was a circumstance, therefore, which the owner had a right to insist upon as an element in estimating the value of the lands.''

This question is discussed and a great number of authorities cited in *Lewis on Eminent Domain,* Section 706 of the Third Edition (old Section 478).   See also *Brown* v. *Weaver Co.,* 3 L. R. A. (New Series), p. 912.

From the authorities to which attention has already been called, including those cited under the above section of Lewis and from what seems to us the better reasoning, we reach the conclusion that the court erred in excluding from the jury all consideration of the fitness and value for park purposes of the land taken in this appropriation.   As well said in a number of the cases, it is difficult to frame a rule which shall be applicable in all cases, but it seems an anomalous thing that if property is specially suitable for a particular use that fact may not be shown when the value of such property is to be ascertained.   This would certainly be true if it was a case of bargain and sale of property; and the owner of property appropriated for public use is not to be a loser by the fact that under the law he is forced to part with his property.   He is entitled to be fully compensated for the value of the property, and while this does not entitle him to ''hold up'' the public because he happens to have the only parcel of land which will answer the purpose of the public, still he is not to be cut down to what the land would be worth for a purpose to which it is less fitted than for the purpose for which it is appropriated.

*Every* use for which the land is suitable should be taken into account in determining its value, and taking into account such uses, including the use for which the appropriation is made, the jury should say what the fair value of the land is, and this does not require of the jury nor must not permit the jury to put a speculative or an exorbitant price upon the land, but to determine and allow what, all things being taken into account, the land is fairly worth.

Without going into detail on the rulings on evidence, it is sufficient to say that whatever evidence was excluded, which under the proposition enunciated would have aided in determining the fitness of the value of the land for park purposes, should have been admitted.

For the reasons pointed out, the judgment is reversed and the cause remanded.

### ERROR IN DIRECTING VERDICT FOR DEFENDANT.