CITY OF GREENSBORO v. J. C. BISHOP et al.

(Filed 20 November, 1929.)

1. **Eminent Domain C d—On appeal it must be shown that levy of assessments was fraudulent, arbitrary or confiscatory.**

Where assessments for special benefits against property abutting a street sought to be improved have been levied by the commissioners and regularly confirmed by the municipal governing body in accordance with statutory provisions, the action of the commissioners is ordinarily conclusive, and the owner of the property so assessed is not entitled to have an issue submitted to a jury to fix the amount of such assessment to be charged against his property in the absence of an allegation of bad faith, or arbitrary conduct, or abuse of discretion, or wilful misconduct on the part of the governing body, or gross injustice, or that the assessments were confiscatory, and his appeal without such allegations or evidence supporting them will be dismissed.

2. **Eminent Domain C b—Cross-examination of assessor as to amount allowed other adjacent owners held competent.**

Where on appeal from the levy of assessments for street improvements involving also the issue of compensation for land taken in condemnation proceedings, it is competent for the owner of the land, for the purpose of impeachment, to cross-examine the city's witness, an appraiser in the proceedings, as to the amount allowed other adjacent owners in the same proceedings when a sufficient similarity as to the comparative value of the lands taken is shown.

APPEAL by city of Greensboro, plaintiff, petitioner, and J. C. Bishop, defendant, respondent, from *Shaw, J.,* April Term, 1929, of GUILFORD. *Both appeals affirmed.*

*Robert Moseley and Andrew Joyner, Jr., for plaintiff, petitioner.*
*A. C. Davis and Frazier & Frazier for defendant, respondent.*

CLARKSON, J. This was a special proceeding brought by the city of Greensboro, plaintiff, petitioner, against J. C. Bishop, defendant, respondent, and others, to condemn certain land and create a special assessment district area to pay the cost of improvement on Bishop Street in the corporate limits of the city of Greensboro. Bishop Street extends one city block eastwardly from Elm Street to Church Street, and is one city block north from O. Henry Hotel. Bishop Street, at the time of filing the petition by interested property owners to improve same, was 18 feet wide between curbs, with sidewalks six feet wide on either side of the street. The petition provided that Bishop Street be widened to 34 feet between curbs with sidewalks 8 feet wide on either side of the street. The entire width of Bishop Street to be increased from 30 to 50 feet. To do this, it was necessary to widen Bishop Street: (1) to condemn certain lands of the defendant, respondent, J. C. Bishop; (2) to create a special assessment district to pay the cost of such improvements. See chapter 220, Public Laws of N. C., 1923; C. S., 2792 (Sup., 1924) (a) to (p) inclusive, "An act to incorporate the City of Greensboro," etc.; chapter 37, Private Laws of N. C., session 1923; chapter 107, Public Laws, Extra Session, 1924; chapter 217, Private Laws 1927.

It seems that the law in regard to the special proceeding in the present action was carefully complied with, in fact the regularity of the proceedings by defendant, respondent, Bishop, was admitted.

We will consider first defendant respondent's, J. C. Bishop's, appeal to the Supreme Court. He was assessed for special benefits alleged to have resulted to his property in the area of the special assessment district according to the benefits accruing from such improvement.

The question involved: May a dissatisfied property owner, upon appeal to the Superior Court from a benefit assessment charged against his property by the commissioners and regularly confirmed by a municipal governing body in a proceeding brought under the provisions of C. S., 2792(a), *et seq., supra,* in the absence of an allegation of *mala fides* or arbitrary conduct, or abuse of discretion, or wilful misconduct on the part of the governing body, or gross injustice, have an issue submitted permitting the jury to fix the amount of such benefit assessment, if any, to be charged against his property? We think not.

The statutes applicable: C. S., 2792(i), in part: "If any party to the proceedings shall be dissatisfied with the report of the commissioners, or the assessment levied by the said governing body, he may file exceptions thereto with the clerk of the Superior Court within ten days after the filing of said report with said clerk, or in the event the appeal be from the levying of the assessment by said governing body, within ten days after the confirmation of such assessment roll by such governing body, and the issues of fact and law raised before the clerk in the said proceedings and upon the said exceptions shall be transferred to the Superior Court for trial in like manner as provided in the case of other special proceedings pending before the clerk," etc. C. S., 2792(h); C. S., 2714.

The city of Greensboro, plaintiff, petitioner, does not deny that defendant, J. C. Bishop, respondent, had a right to appeal, but that Bishop's exceptions do not set forth sufficient grounds—in that the exceptions do not contain an allegation of *mala fides* or arbitrary conduct, or abuse of discretion, or wilful misconduct on the part of the governing body, or such gross injustice to the effect that the assessment was so excessive as to result in the confiscation of defendant respondent's property. It appears that the sole complaint of defendant, respondent, is based upon the contention that the assessment for benefits was excessive and his dissatisfaction with same.

When the matter came on for hearing on appeal in the Superior Court the plaintiff, petitioner, city of Greensboro, moved the court to overrule the exceptions of defendant, propounder, J. C. Bishop, and confirm the report of the city council on the ground that the exceptions did not set forth allegations sufficient to raise issues of fact to be submitted to the jury. The court below overruled the exceptions and confirmed the judgment of the city council, and in this we think there was no error.

It is contended by defendant, petitioner, that the language of the statutes allowing appeals referred to, *supra,* used the expressions: C. S., 2792(i) "dissatisfied with a report of the commissioners," etc. C. S., 2714, "If a person assessed is dissatisfied with the amount of the charge," etc. C. S., 2792(h), "If a person assessed is dissatisfied with the amount of the charge," etc. That these sections allow an appeal in all cases where there is dissatisfaction as to the amount of the benefits assessed by the person whose land is charged. We cannot so hold. The defendant, propounder, was given notice and a hearing as to benefits assessed under the statute 2792(g): "At the time appointed for the purpose, or to some other time to which it may adjourn, the governing body, or a committee thereof, must hear the allegations and objections of all persons interested who appear and make proof

in relation thereto. The governing body may thereupon correct such assessment roll and either confirm the same or may set it aside and provide for a new appraisal of benefits in such proceeding pending before the clerk of the Superior Court."

In accordance with the statute, upon objection by defendant, propounder, after due consideration of the merits of same, the city council declined to overrule the report of the commissioners and passed the following resolution: "That the city council is of the opinion, and now finds as a fact, that each tract of land referred to in the commissioners' report of benefits is actually benefited by the improvement described in this proceeding, in the amount shown by said report and the said assessment roll."

The Legislature has fixed this method of procedure, giving notice and a hearing, and it has been repeatedly held that the decision of the body is ordinarily conclusive and the power is based on the right to tax and not eminent domain.

In *Kinston v. Wooten,* 150 N. C., at p. 299, it is said: "From this it would seem to follow that the right of imposing such burdens, unlike the power of general taxation, is not unlimited and without restraint, but may be in certain cases subjected to judicial scrutiny and control." At page 302: "It will thus be seen that, while the right of the court to interfere for the protection of the individual owner of property is recognized, its exercise can only be justified and upheld in rare and extreme cases, when it is manifest that otherwise palpable injustice will be done and the owner's rights clearly violated. This limitation arises of necessity in this scheme of taxation, for in its practical application it would wellnigh arrest all imposition of these burdens if each individual owner of property were allowed to interfere and stay the action of the officials on any other principle."

In *Atlanta v. Hamlein,* 96 Ga., 383, the following from that decision is approved in *Tarboro v. Staton,* 156 N. C., at p. 508: "It is inconsistent with the proper exercise of the taxing power, and would tend to manifest embarrassment of the public in the prosecution of these public improvements, if, upon every assessment, the lot owner were entitled to have the question judicially determined whether or not he was benefited by the proposed improvement. As to whether he was benefited or not is a question which should address itself to the discretion of the municipal authorities. Their judgment upon this subject is ordinarily, except in the most extreme cases, conclusive; but, as we have before stated, it is not allowable that the municipal authorities, under the guise of a public improvement, should arbitrarily deprive the citizen of his estate. If, therefore, in the levy of such assessments, the cost of the improvement be so disproportioned to the value of the estate sought to be improved as

that the levy of the assessment amounts to a virtual confiscation of the lot owner's property, such assessment cannot be upheld as a legal or valid exercise of the power to tax for such improvements."

In *Felmet v. Canton,* 177 N. C., at p. 54, citing a wealth of authorities, speaking to the subject: "The right of municipalities to make these assessments for public-local purposes, when acting under legislative authority properly conferred, has been very broadly upheld in this State, extending to any of the recognized methods of procedure and apportionment and including both the front-foot rule as well as the creation of local assessment districts. Being, as it is, referred to the power of taxation, it is very largely a matter of legislative discretion, usually held to be conclusive as to the necessity for the improvement, and in respect to the method of apportionment as well as the amount it only becomes a judicial question in cases of palpable and gross abuse."

In *Anderson v. Albemarle,* 182 N. C., at p. 435: "The question of benefit is one of fact, and the governing board of a municipality, under legislative authority, is vested with the power to determine what lands will be benefited by the improvements, and their determination is conclusive upon the owner of the ground charged with the costs of the improvements except in rare cases." *Gunter v. Sanford,* 186 N. C., 456.

In *Durham v. Proctor,* 191 N. C., at p. 121, it is said: "The municipal authorities were fully empowered to establish the assessment district, and to assess the burdens in proportion to the benefits. . . . Ample provision is made for a hearing, and such was accorded. There is nothing to justify the conclusion that the authorities acted arbitrarily or with *mala fides.*"

In *Butters v. Oakland,* 263 U. S., at pp. 164-5, it is said: "Ample provision is made for a hearing, and a hearing was accorded. There is nothing to justify the conclusion that the authorities acted arbitrarily or fraudulently."

The principle cited in the above authorities has long been the law in this jurisdiction and the statutes allowing appeals for dissatisfaction with the amounts charged as special benefits have been in force, but the appeal applies only in such cases as where the exception charges *mala fides* or arbitrary conduct or wilful misconduct of the governing body, or abuse of discretion, or such gross injustice as to make the assessment of benefits confiscatory. None of these allegations were made by defendant, respondent, in his exceptions on appeal. The court below overruled the exceptions because the allegations were not made, therefore there were no issues to be submitted to the jury, and confirmed the judgment of the city council. In this we think there was no error.

The judgment of the court below on defendant, respondent Bishop's appeal is

Affirmed.

We will now consider plaintiff, petitioner, the city of Greensboro's appeal, to the Supreme Court:

J. C. Bishop, defendant respondent, owned a strip of land, approximately 20 feet wide, necessary to widen Bishop Street. The proceeding in which the land was condemned and the damages therefor fixed was brought under the provisions of chapter 220, Public Laws 1923 (C. S., 2792 a to p inclusive), as amended.

From the report of the commissioners awarding damages, duly confirmed in accordance with the statute, the defendant respondent, J. C. Bishop, gave the proper notice and appealed to the Superior Court on the ground that the award of damages was inadequate and setting forth the reasons.

The issue submitted to the jury in the Superior Court and their answer thereto was as follows: "What damages, if any, have resulted to the defendant's property by reason of the widening of Bishop Street and the taking of the strip of land approximately 20 feet wide? Answer: $4,576.65."

The court below rendered judgment, in part, as follows: "It is further ordered, adjudged and decreed, that the defendant, J. C. Bishop, recover of and from the city of Greensboro the sum of $4,576.65, and that the cost of this proceeding be taxed by the clerk against the city of Greensboro." Plaintiff, petitioner, city of Greensboro, moved to set aside the verdict and for a new trial. Motion overruled. Exception by the city of Greensboro. Judgment was signed as above set forth.

The plaintiff, petitioner, city of Greensboro, assigned as error: "The action of the court in permitting the witness, J. R. Cutchin, to testify as to the damage fixed by the commissioners for a lot other than the plaintiff's lot."

J. R. Cutchin was one of the three appraisers or commissioners appointed to assess the cost against the plaintiff, petitioner, city of Greensboro, for taking the strip of land 20 feet wide necessary for improving Bishop Street in the area designated. Upon appeal by defendant, respondent, J. C. Bishop, to the Superior Court on the ground of inadequacy of the damage, the Commissioner Cutchin was a witness in behalf of the city of Greensboro. The city of Greensboro contends that the question involved: Upon the hearing in the Superior Court of an appeal as to damage to A.'s land resulting from the condemnation of a part thereof, is it competent to impeach a witness, who has testified as to the amount of such damages, by showing that, as appraiser in the condemnation proceeding, he estimated the damages to B.'s land, part of which was condemned in the same proceeding, to be a larger amount than the damage to A.'s land, without first showing that both tracts were similarly situated and of similar character?

GREENSBORO v. BISHOP.

J. C. Bishop contends: That the questions were asked on cross-examination and that the court limited the evidence as follows: The court: "Gentlemen, this evidence about that corner lot is only admissible as tending to impeach the witness, not to show the damage to this lot, but simply as tending to impeach the witness." The respondent, Bishop, insisted throughout the trial that he had been allowed an inadequate sum for the strip of land condemned and taken for street purposes by the city of Greensboro, and appealed for that reason. He insisted that no uniform rule had been adopted and that the appraiser Cutchin, along with the other appraisers, had allowed a much higher rate for the property located at the corner of Bishop and Church streets than should have been allowed, and that much less had been allowed him than ought to have been allowed him.

In *Ayden v. Lancaster, ante,* 556, the subject of proximity and similarity of land to determine value standard was discussed. We repeat what Dean Wigmore said, speaking to the subject (Wigmore on Evidence, Vol. 1, 2nd ed., p. 1136, part section 718) : "Hence, the question arises how far an acquaintance with value standards in one place will suffice when the value in question is of a thing in another place. The witness' competency must here depend upon whether the conditions of value in the two places are sufficiently similar to render his knowledge of values in one place adequate for estimating them in the other. The application of this principle must depend on the circumstances of each case, and no further detailed rules can be laid down." *Ayden v. Lancaster, supra,* at pp. 561-2.

In this character of evidence (value standards) no iron-clad rule can be laid down. The relevancy is largely with the court below, the probative force is for the jury. In the present case, the evidence adduced was on cross-examination and allowed for the purpose of impeachment.

*Ruffin, J.,* in *S. v. Morris,* 84 N. C., at p. 763, speaking of cross-examination, says : "All trials proceed upon the idea that some confidence is due to human testimony, and this confidence grows and becomes more steadfast in proportion as the witness has been subjected to a close and searching cross-examination; and this, because it is supposed that such an examination will expose any fallacy that may exist in the statement of the witness, or any bias that might operate to make him conceal the truth, and trials are appreciated in proportion as they furnish the opportunities for such critical examinations." *Milling Co. v. Highway Commission,* 190 N. C., 692.

It must be borne in mind that the witness, Cutchin, was one of the commissioners who signed the report and made the appraisal as to the value of Bishop's land taken by the city of Greensboro. When he as one of the commissioners appointed to appraise the land, he was then

acting in the capacity of an impartial arbiter. He also was one of the appraisers of the Masonic lot. When he became a witness for the city of Greensboro he was subject to cross-examination as any other witness for the purpose of impeachment and to show bias. The Masonic lot was in the proximity, not exactly similar, but the difference testified to so that the jury had all the facts before them. If error, we cannot on the record hold it prejudicial or reversible.

We do not think the evidence in the present case, which was brought out on cross-examination, militates against the principle in the cases cited by plaintiff, petitioner, city of Greensboro. *Warren v. Makely,* 85 N. C., 12; *Bruner v. Threadgill,* 88 N. C., 361; *Belding v. Archer,* 131 N. C., 287; *Brown v. Power Co.,* 140 N. C., 333.

The judgment of the court below on plaintiff, petitioner, city of Greensboro's appeal, is

Affirmed.