THE CITY OF RALEIGH, a MUNICIPAL CORPORATION, v. MECHANICS & FARMERS BANK.

(Filed 14 July, 1943.)

**1. Statutes § 5a: Courts § 1a—**

Wisdom or impolicy of legislation is not a judicial question. The province of this Court ends when it interprets the legal effect of legislative enactments.

**2. Statutes § 5a—**

As a rule, in determining the construction to be given legislative enactments, the courts are not controlled by what the Legislature itself apparently thought the proper interpretation, but the language employed, taken in connection with the context, the subject matter and the purpose in view, must be considered in order to ascertain the legislative intent.

**3. Same—**

When the heading of a section is misleading or is not borne out by the explicit language of the statute itself, it may be disregarded; but, when the meaning is not clear or there is ambiguity, the heading, which the Legislature had adopted in enacting the statute, becomes important in determining the legislative intent.

RALEIGH *v.* BANK.

**4. Municipal Corporations § 34: Limitation of Actions § 2a—**

In a suit under C. S., 7990, to foreclose a statutory lien on abutting property, given a city for street improvements, all installments of the amounts assessed therefor, which are ten years overdue when action is brought, are barred by the statute of limitations under C. S., 2717 (a), now N. C. Code, 1943, secs. 160-93, and no part of the proceeds of sale can be applied to the payment of such installments.

**5. Statutes § 5b: Constitutional Law §§ 4a, 4d: Limitation of Actions § 1b: Municipal Corporations § 34—**

The Legislature may set a time clock even for the sovereign; and the maxim *nullum tempus occurrit regi* is not applicable to statutes which impose a limitation upon the exercise of powers granted municipalities for the enforcement of statutory liens of assessments for public improvements.

**6. Municipal Corporations § 34—**

Local assessments may be a species of tax, but they are not taxes as generally understood in constitutional restrictions and exemptions.

**7. Constitutional Law § 4b: Taxation § 1—**

There is no provision of the N. C. Constitution directly forbidding the Legislature to pass any law releasing or remitting taxes.

**8. Process § 2—**

In a civil action, the delivery of summons and copy of complaint to the sheriff for service fixes the beginning of the action as of that date.

WINBORNE, J., dissenting.
STACY, C. J., and BARNHILL, J., concur in dissenting opinion.

APPEAL by plaintiff from *Burney, J.,* at February Term, 1943, of WAKE. Affirmed.

This was a civil action for the foreclosure of street assessment liens, under C. S., 7990, on eight lots in the city of Raleigh, described in the pleadings, now owned by the defendant.

It was admitted that the proceedings for the assessment on the described lots of the apportioned cost of the local improvements were sufficient to subject said lots to a lien in favor of the plaintiff therefor, in accordance with the statutes. The improvements were made in 1926 and 1927, and the cost chargeable to said lots was made payable, in each case, in ten equal annual installments thereafter. The installments were successively due the first Monday in October each year, with interest from the date of confirmation of the assessment. Certain of the earlier installments were paid when due, but the others remain unpaid. The number and amount of installments paid and those unpaid are set out in the pleadings and are undisputed. The summons in this action was issued 3 October, 1942, and summons with copy of the complaint was

delivered to the sheriff for service 5 October, 1942. The first Monday in October, 1932, was the 3rd day of that month. The defendant pleaded the statute of limitations as to each unpaid installment which became due more than ten years before the institution of the action.

Jury trial was waived, and the court, after finding the facts, concluded "that each and all unpaid annual installments and interest thereon which became due and payable on or before the 4th day of October, 1932, are barred by the ten years' statute of limitations, being sec. 2717 (a), N. C. Code, ch. 331, Public Laws 1929," and that the liens growing out of said installments are also barred and no part of the proceeds of sale can be applied to the payment of such installments. It was further concluded that the installments due in 1933, 1934, 1935, and 1936, together with interest thereon, were valid liens on the described lots.

It was thereupon adjudged that the payment in full of the installments not barred should constitute a discharge of all claims and demands of the plaintiff on account of the improvements referred to, and that upon failure to pay, the described lots should be sold by the commissioners appointed for that purpose.

To the conclusions of law and the judgment thereon the plaintiff duly excepted and appealed to this Court.

*P. H. Busbee and John G. Mills, Jr., for plaintiff City of Raleigh, appellant.*

*William Henry Hoyt, of counsel.*

*Briggs & West and Murray Allen for defendant Mechanics & Farmers Bank, appellee.*

*Wellons & Wellons, W. A. Dees, Edward B. Hope, William B. Campbell, J. W. Ellis, Folger & Folger, F. O. Carver, R. B. Lee, P. V. Critcher, Waller D. Brown, Thorp & Thorp, Womble, Carlyle, Martin & Sandridge & Nat S. Crews, G. H. Jones, counsel amici curiæ.*

DEVIN, J. The plaintiff's appeal brings up for review the ruling of the court below that in a suit to foreclose the statutory lien on abutting property, given the city for street improvements, the installments of the amounts assessed therefor which are ten years past due are barred by the statute of limitations.

The particular question posed is whether chapter 331, Public Laws 1929 (sec. 2717 [a], N. C. Code), should be construed to impose a limitation of ten years, in a foreclosure suit under C. S., 7990, as to all installments of the amounts assessed for street improvements which are ten years overdue when action brought.

It is admitted that several of the annual installments assessed against the lots now belonging to the defendant were more than ten years past due when this action was instituted. Hence, if the Act of 1929 be construed to be a statute of limitation, this action as to such installments is barred. Thus, the determinative question for decision is clearly presented.

In chapter 56 of the Consolidated Statutes are codified all the general laws relating to municipal corporations, and beginning with sec. 2703 and extending through sec. 2737 are found the particular statutes regulating assessments for public improvements. The subject matter embraced in each of these sections is indicated by the heading. Sec. 2717 relates to the enforcement of payment of assessments. At the Session of 1929 the Legislature, by ch. 331, amended sec. 2717 by adding thereto provisions for reinstating and extending assessments in arrears, and then added an entirely new section to the Consolidated Statutes, to appear next after 2717, as follows: "2717 (a). Sale of Foreclosure for Unpaid Assessments Barred in Ten Years: No Penalties. No statute of limitation, whether fixed by law especially referred to in this chapter or otherwise, shall bar the right of the municipality to enforce any remedy provided by law for the collection of unpaid assessments, whether for paving or other benefits, and whether such assessment is made under this chapter or under other general or specific acts, save from and after ten years from default in the payment thereof, or if payable in installments, ten years from the default in the payments of any installment. No penalties prescribed for failure to pay taxes shall apply to special assessments, but they shall bear interest at the rate of six per cent per annum only . . ."

While this act may be lacking in that degree of precision ordinarily to be found in restrictive statutes, we think the legislative intent to fix a time limit of ten years for the institution of a suit to foreclose a street assessment lien sufficiently appears.

In view of the decision of this Court in *Morganton v. Avery,* 179 N. C., 551, 103 S. E., 138, holding the three years' statute of limitations applicable to suits to enforce collections of street assessments, and the decision in *Drainage District v. Huffstetler,* 173 N. C., 523, 92 S. E., 368, holding the ten years' statute applicable to drainage assessments, and *Schank v. Asheville,* 154 N. C., 40, 40 S. E., 687, holding the assessment had the effect of a judgment and lien, and *Coble v. Dick,* 194 N. C., 732, 140 S. E., 745, likening the assessment to a statutory mortgage, and in view of the local statutes prescribing for certain towns different limitations, as well as the provision of C. S., 8037, then in force, prescribing a limitation of five years for tax foreclosure for municipal corporations, it is reasonably to be inferred that by the language in which this section

was expressed the General Assembly intended to clarify the situation and to establish the uniform limitation of ten years for the enforcement by municipalities of the remedies provided by law for the collection of unpaid assessments.

While the legislative intent is to be gathered from the language used, it is obvious that the Legislature in this instance understood it was providing such a limitation, for it enacted a new section to follow immediately after 2717, and gave the new section the caption "Sale of Foreclosure for Unpaid Assessments Barred in Ten Years." The significance of this heading is materially aided by the fact that it was enacted by the Legislature itself as a part of the Act. Also, on the margin of the original act, ch. 331, Public Laws 1929, as indicating its context, appear the words "Foreclosure for unpaid installments barred after ten years," and in the recent revision of our statutes, enacted by the General Assembly of 1943, entitled General Statutes of 1943, section 2717 (a), appears as section 160-93 with the heading "Sale or foreclosure for unpaid assessments barred in ten years."

As a rule in determining the proper construction to be given legislative enactments, the courts are not controlled by what the Legislature itself apparently thought the proper interpretation should be, but the language employed, taken in connection with the context, the subject matter and the purpose in view must be considered in order to ascertain the legislative intent, which, after all, is the primary purpose of all judicial construction. *S. v. Humphries,* 210 N. C., 406, 186 S. E., 473. As was said by *Walker, J.,* in *S. v. Earnhardt,* 170 N. C., 725, 86 S. E., 960: "It is common learning that a statute must be so construed as to give effect to the presumed and reasonably probable intentions of the Legislature and so as to effectuate that intention and the object for which it was passed."

True, when the heading of a section is misleading or is not borne out by the explicit language of the statute itself, it may be disregarded, but when the meaning is not clear or there is ambiguity the heading which the Legislature has adopted in enacting the statute becomes important in determining the legislative intent. The heart of a statute is the intent of the lawmaking body. As was said by *Chief Justice Marshall* in *U. S. v. Fisher,* 2 Cranch (U. S.), 358 (356): "Where the mind labors to discover the design of the legislature, it seizes everything from which aid can be derived; and in such case the title claims a degree of notice, and will have its due share of consideration." To the same effect is the statement of *Chief Justice While* in *Knowlton v. Moore,* 178 U. S., 41 (65), and in *McGuire v. Comr. of Int. Rev.,* 313 U. S., 1 (9), it was said: "While the title of an act will not limit the plain meaning of the text, it may aid in resolving an ambiguity." While the caption may not

control the text when it is clear, it may be called in aid of construction. *In re Will of Chisholm,* 176 N. C., 211, 189 S. E., 498.

Thus, the clear implication that the Act of 1929 was intended to establish ten years as the period of limitation for the foreclosure of the lien is fortified by the definite expression by the Legislature itself in the caption that foreclosure should be barred in ten years.

It would seem also that succeeding Legislatures also considered that the Act barred foreclosure suits on assessment installments ten years past due, for in 1931, and again in 1933, and again in 1935, and again in 1937, and again in 1939, and again in 1941, and again in 1943, municipal corporations were given the right by resolution to extend the time of payment of installments, which would enable them to avoid the bar of the statute, if they desired to do so.

From an examination of these statutory provisions we think it may fairly be gathered that it was the legislative purpose to provide the purchaser or owner of real property in a city with some period of relief against an ancient assessment, and that those more than ten years past due should not be brought forward in a suit for the foreclosure and sale of his property. Statutes of repose are in the interest of the security of titles. The suggestion that to hold a suit to enforce collection of unpaid installments barred after ten years would add to the burden of other taxpayers is equally true of every kind of unpaid tax, whether due to the insolvency of the taxpayer or the negligence of the tax collector, but that was a matter for the consideration of the Legislature and not the courts.

In the exercise of its undoubted power to construe and give authoritative interpretation to the acts of the General Assembly, this Court has several times considered the Act of 1929 and construed it as prescribing a limitation of ten years to a suit to foreclose the lien of an assessment for local improvements.

In *Statesville v. Jenkins,* 199 N. C., 159, 154 S. E., 15, decided in 1930, where the city sought foreclosure of lien on defendant's lot for street paving assessment, payable in ten annual installments, the defendant pleaded the ten years' statute of limitations. The local act contained no limitation. The case was heard in the Superior Court at November Term, 1929, and the court below held the action barred. On appeal this was reversed, and the Act of 1929 held inapplicable for the reason that this Act did not give a reasonable time within which to bring the action before the bar became effective. It was said in the opinion: "The statute we are considering fixed no time limit for the commencement of action, but barred all assessments ten years from the default in the payment of any installment." In the two dissenting opinions in that case it was thought the three years' statute applied (*Morganton v.*

---

---

*Avery, supra*), and hence the plaintiff city "was in no position to complain at the holding that seven installments are barred under the 1929 statute."

In *High Point v. Clinard,* 204 N. C., 149, 167 S. E., 690, decided in 1933, an action to recover delinquent street assessments, the three years' statute of limitations was pleaded (*Morganton v. Avery, supra*), and it was contended that the Act of 1929, passed after the bar was complete, could not extend the right of action. It was held, however, that the ten years' statute of limitations, as decided in *Drainage District v. Huffstetler, supra,* applied. *Statesville v. Jenkins, supra,* was cited.

In *Farmville v. Paylor,* 208 N. C., 106, 179 S. E., 459, decided in 1935, the ten years' statute of limitations was pleaded to an action to collect street paving assessments. While the case turned upon the construction of the accelerating clause in C. S., 2716, the decision proceeded upon the view that each installment was subject to the bar of ten years after default, citing *High Point v. Clinard, supra.*

In *Charlotte v. Kavanaugh,* 221 N. C., 259, 20 S. E. (2d), 97, the applicability of the Act of 1929 to civil actions to foreclose liens for street assessments was directly involved and carefully considered, and definitely decided by a unanimous Court. After quoting the statute in full, the Court said, *Denny, J.,* delivering the opinion: "Here the municipalities, the sovereigns, are expressly named in the statute of limitations, and we think the General Assembly intended to bar all assessments for local improvements after ten years from default in the payment thereof, or, if payable in installments, in ten years from default of any installments, and we hold that the ten-year statute of limitations is applicable to assessments for local improvements and that the same are barred from and after ten years from default in the payment thereof, or, if payable in installments, ten years from default in the payment of each installment, unless the time for payment has been extended as provided by law." There was no petition to rehear.

The last cited decision was rendered Spring Term, 1942. The Legislature which convened subsequent thereto made no change in this statute except to extend the limitation from ten years to fifteen years, as applicable to the city of Charlotte. Ch. 181, Public Laws 1943. Obviously the law on this point was regarded as settled.

The appellant, however, calls attention to the statement in *Asheboro v. Morris,* 212 N. C., 331, 193 S. E., 424, that "Where the sovereign elects or chooses to proceed under C. S., 7990, no statute of limitations is applicable." In that case the action was to foreclose the lien of a street assessment confirmed in 1925. The first installment was due 1 October, 1926, and the suit was brought 31 May, 1932. Only the three years' statute was pleaded. The ten years' statute was not involved.

In *Charlotte v. Kavanaugh, supra,* referring to this case, it was said: "In that case, however, not having been pleaded, the applicability of the ten-year statute was not directly involved and the provisions of sec. 1, ch. 331, Public Laws of 1929, were not called to the attention of the Court. The effect of this statute on former decisions of this Court was not decided."

It is contended by the plaintiff that the maxim *nullum tempus occurrit regi* should be applied here, and that the city of Raleigh, exercising the power of sovereignty, should not be barred by the lapse of time in the effort to enforce the lien of a special assessment imposed for a public improvement.

While this ancient maxim has lost much of its vigor by the erosions of time, and by legislative enactment, it is still regarded as the expression of a sound principle of government applicable to actions to enforce the sovereign rights of the State. Notwithstanding the inclusive provisions of sec. 420 of the Consolidated Statutes that "the limitations prescribed by law apply to civil actions brought in the name of the State, or for its benefit, in the same manner as to actions by or for the benefit of private parties" (*Threadgill v. Wadesboro,* 170 N. C., 641, 87 S. E., 521), it has been uniformly held that no statute of limitations runs against the State, unless it is expressly named therein. *Wilmington v. Cronly,* 122 N. C., 388, 30 S. E., 9; *Asheboro v. Morris, supra.* However, where in the statutes affording a remedy by a municipal corporation for enforcing the statutory lien of an assessment for public improvement a limitation of time is imposed upon the exercise of that power, manifestly the principle expressed in the quoted maxim is not controlling.

It is contended by appellant that the power to assess property for local improvement, granted to a municipal corporation as a political subdivision of the State, is an exercise of the State's sovereign power to tax and the power to collect taxes should not be restricted. In *Kinston v. R. R.,* 183 N. C., 14, 110 S. E., 645, *Justice Hoke,* speaking for the Court, used this language: "While local assessments of this kind are not regarded as a tax in the sense of a general revenue measure, we have several times held that the right to enforce them is referred to the power of taxation possessed and exercised by government." In *Tarboro v. Forbes,* 185 N. C., 59, 116 S. E., 87, *Adams, J.,* writing the opinion of the Court, states the law as follows: "But there is a distinction between local assessments for public improvements and taxes levied for purposes of general revenue. It is true that local assessments may be a species of tax, and that the authority to levy them is generally referred to the taxing power, but they are not taxes within the meaning of the term as generally understood in constitutional restrictions and exemptions. They are not levied and collected as a contribution to the maintenance of the

general government, but are made a charge upon property on which are conferred benefits entirely different from those received by the general public." The distinction between the general power to tax and proceedings for enforcement of special assessments was pointed out in *Charlotte v. Kavanaugh, supra; Saluda v. Polk County,* 207 N. C., 180, 176 S. E., 298; and *Rigsbee v. Brogden,* 209 N. C., 510, 184 S. E., 24. But the statute here invoked is applicable not so much to the right as to the remedy, not so much to the power as to its particular exercise. It affects the right "to enforce any remedy provided by law for the collection of unpaid assessments." It deals only with actions by municipalities to enforce local assessments. In *Raleigh v. Jordan,* 218 N. C., 55, 9 S. E. (2d), 507, a suit to enforce a lien on property for the unpaid taxes of 1925 and 1926, barred by the Act of 1933, it was said: "In some states the Constitution directly forbids the Legislature to pass any law releasing or remitting taxes. There is no such provision in our Constitution. If other parts of the Constitution should be considered as preventing the direct release of taxes, there would seem to be no question that the Legislature may deal with the lien of taxes as it sees fit, may determine when there should be a lien, when it should attach, and when it should cease." And in *Charlotte v. Kavanaugh, supra,* it was said: "Unquestionably the General Assembly has the right to fix the procedure and prescribe the limitations under which specifically granted powers shall be exercised."

In *New Hanover County v. Whiteman,* 190 N. C., 332, 129 S. E., 808, cited by appellant, it was said there was no statutory bar to an action to foreclose the tax lien, but this case, decided in 1925, as also did *Wilmington v. Cronly, supra,* decided in 1898, referred to the general lien for *ad valorem* taxes and did not relate to special assessments for local improvements.

*Logan v. Griffith,* 205 N. C., 580, 172 S. E., 348, was the case of an individual suing on a tax sale certificate. This was held barred by C. S., 8037, which was then in force. While it was said in that case "the sovereign may proceed under C. S., 7990, to foreclose the lien, in which event no statute of limitations is applicable," the reference was to *ad valorem* taxes for general purposes. *New Hanover v. Whiteman, supra,* was cited in support. The Act of 1929 was not involved and was not referred to. Its effect upon actions by municipal corporations to enforce payment of special assessments was not considered or decided. However, the power of the Legislature to set a time clock even for the sovereign, as was done by C. S., 8037, with respect to municipalities, was distinctly affirmed.

The appellant excepted to the ruling of the court below that in the event of foreclosure sale the proceeds would be available only for the

discharge of the installments not barred. This is based upon the view that even if installments more than ten years past due be held barred by the statute of limitations, the funds derived from the sale, if consummated, should be applied to the payment of all unpaid installments, including those more than ten years past due, and the case of *Demai v. Tart,* 221 N. C., 106, 19 S. E. (2d), 130, is cited in support.

While the determination of this question may not become necessary, since the payment of the installments not barred would discharge the liens and avoid a sale, we think the principle enunciated in the *Demai case, supra,* is not applicable to the facts in this case. It was held in that case that where a deed of trust on land secured a debt evidenced by two notes, one barred by the statute of limitations and the other not, the trustee following foreclosure sale had the right to apply the proceeds to the payment of the entire unpaid debt, represented by the balance due on both notes. But this was upon the view that the language of C. S., 437 (3), barring an action for the foreclosure of a mortgage unless begun "within ten years of the last payment on the same," referred to the debt secured by the mortgage, without regard to its subdivision into separate notes. The decision was based on the sound principle that the deed of trust created a lien upon the lands and set them apart in trust for the payment of the debt, with suitable provision for sale and application of the proceeds, as a separable specific agreement, and raised "an obligation with respect to both the debt and the lands not comprehended in the promissory notes given with respect to the same debt but in addition thereto."

This principle, so aptly stated in the opinion written for the Court by *Justice Seawell,* was an outgrowth of the relationship of debtor and creditor, of the primary personal obligation of the mortgagor to pay the debt. Here the ordinary relationship of debtor and creditor did not exist. There was no personal obligation to pay. The statute creating the lien operated only *in rem,* and subjected the particular parcel of land to a statutory foreclosure and sale for nonpayment of a sum apportioned as representing the benefits accruing to that lot, and without regard to successive transfers of title.

It will be noted also that the Act of 1929 prescribes the time limit of ten years "from the default in the payment of any installment." This was interpreted in *Charlotte v. Kavanaugh, supra,* to mean "ten years from default in the payment of each installment," p. 269.

If it be thought that effect should be given to the provisions relative to *ad valorem* taxes in C. S., 2815, that the lien for taxes levied shall attach to all the real estate of the taxpayer and shall continue until such taxes shall be paid, it may be noted that C. S., 2713, relating to local assessments provides only that the assessment when confirmed shall be a

lien on the real property against which it is assessed, superior to all other liens.

Whether there ought to be a statute of limitations limiting the time for the enforcement of liens for street assessments is a matter for the Legislature. "Wisdom or impolicy of legislation is not a judicial question. *Sidney Spitzer & Co. v. Comrs. of Franklin County,* 188 N. C., 30. Policy of legislation (is) for the people, not courts. *Bond v. Town of Tarboro,* 193 N. C., 248. Courts do not say what the law ought to be, but only declare what it is. *State v. Revis,* 193 N. C., 192." *Reed v. Highway Com.,* 209 N. C., 648 (655), 184 S. E., 1. The province of this Court ends when it interprets the legal effect of legislative enactments and determines "with cold neutrality" the questions of law properly presented for decision.

The finding by the court below, to which no exception was noted, that summons in this case was delivered to the sheriff for service 5 October, 1942, fixed the beginning of the action as of that date. C. S., 475; *Webster v. Sharpe,* 116 N. C., 466, 21 S. E., 912; *Morrison v. Lewis,* 197 N. C., 79, 147 S. E., 729; *Cherry v. Whitehurst,* 216 N. C., 340, 4 S. E. (2d), 900. Hence, the ruling that the installment which became due and payable 3 October, 1932, was barred before the summons was delivered to the sheriff for service, must be upheld.

The amounts of the installments of the assessments on defendant's lots constituting valid liens thereon at the time of the institution of this action, together with interest thereon, sufficiently appear from the admissions in the pleadings and the judgment. No question was raised here as to the correctness of the amounts properly to be ascertained under the court's rulings.

After careful consideration we reach the conclusion that the judgment below must be

Affirmed.

WINBORNE, J., with whom STACY, C. J., and BARNHILL, J., concur, dissenting: The questions involved on this appeal are of great concern not only to all taxpayers within the city of Raleigh but to all those in every municipality in the State of North Carolina. The statute pleaded by defendant in limitation of this action is in derogation of sovereign authority and of common right. The case calls for deliberate consideration in the "cold neutrality" of law and justice unaffected by pride of opinion in former decisions rendered by this Court.

The appellant, city of Raleigh, challenges, and seeks to have this Court reconsider former decisions, and to hold (1) That the 1929 Act, chapter 331, section 1, subsection (b), designated C. S., 2717 (a), is not an independent ten-year statute of limitation, imposing a limit where

none existed before, but is merely an amendatory act applicable only when any prior act prescribed a shorter period for commencing actions to enforce special assessments; and (2) that there is no statutory bar to an action instituted by a municipality under the provisions of C. S., 7990, to foreclose the lien of assessments for public improvements. This calls for reconsideration in particular the case of *Charlotte v. Kavanaugh,* 221 N. C., 259, 20 S. E. (2d), 97.

The majority opinion contains these pronouncements: (1) The policy of the State as established over the years is expressed in the maxim *nullum tempus occurrit regi,* which "is still regarded as the expression of a sound principle of government." (2) It has been uniformly held that "no statute of limitations runs against the State unless it is expressly named therein." (3) The Act of 1929, chapter 331, is "lacking in that degree of precision ordinarily to be found in restrictive statutes." With these premises, we are all in accord. With the reasoning and conclusions thereafter announced, we disagree.

In stating our views we deem it necessary to advert to and state, consider and apply basic principles, and to review decided cases.

## I. ASSESSMENTS IN ESSENTIAL CHARACTER ARE A SPECIES OF TAXES.

The right to assess land benefited thereby, for cost of public-local improvement, is usually referred to the power of taxation inherent in a sovereign state. The Legislature alone has the right to exercise this power. This it may do directly, or it may delegate the power to municipal corporations as governmental agencies of the State. In either event, therefore, assessments, when levied, deriving their existence from the sovereign power of taxation, of necessity, assume and retain the character of the power which gives them legality. As taxes are enforced contributions of money assessed upon property in general by authority of the sovereign state to the maintenance of government, *Orange County v. Wilson,* 202 N. C., 424, 163 S. E., 113, assessments are enforced contributions of money levied upon particular property by authority of and under the taxing power of the sovereign state to defray the costs of public improvements. As taxes shall be levied only for public purposes, N. C. Constitution, Art. V, section 3, *Briggs v. Raleigh,* 195 N. C., 223, 141 S. E., 597; *Palmer v. Haywood County,* 212 N. C., 284, 193 S. E., 668, 113 A. L. R., 1195; *Sing v. Charlotte,* 213 N. C., 60, 195 S. E., 271, assessments shall be levied only for public purposes. 44 C. J., 481; *Kinston v. R. R.,* 183 N. C., 14, 110 S. E., 645. And as taxes shall be uniform as to each class of property taxed, N. C. Constitution, Art. V, section 3, assessments under the Local Improvement Act shall be uniform on all property benefited within the meaning of the Act. C. S., 2710.

These principles are in accord with the great weight of authority. Dillon's Commentaries on the Law of Municipal Corporations, sections 1430, 1431; Page and Jones in Treatise on Law of Taxation by Local and Special Assessments, sections 8, 89, pages 13, 89; McQuillin in The Law on Municipal Corporations, sections 2165, 2166, 2170, Vol. 52, 2 Ed., pages 568, 573, 593; 25 R. C. L., 85; 44 C. J., 481, Municipal Corporations, sections 2806, 2807; *Spencer v. Merchant,* 125 U. S., 345, 31 L. Ed., 763; *Bauman v. Ross,* 167 U. S., 548, 42 L. Ed., 270. *Cain v. Comrs.,* 86 N. C., 8; *Raleigh v. Peace,* 110 N. C., 32, 14 S. E., 521; *Greensboro v. McAdoo,* 112 N. C., 359, 17 S. E., 178; *Hilliard v. Asheville,* 118 N. C., 845, 24 S. E., 738; *Asheville v. Trust Co.,* 143 N. C., 360, 55 S. E., 800; *Kinston v. Wooten,* 150 N. C., 295, 63 S. E., 1061; *Schank v. Asheville,* 154 N. C., 40, 69 S. E., 681; *Tarboro v. Staton,* 156 N. C., 504, 72 S. E., 577; *Justice v. Asheville,* 161 N. C., 62, 76 S. E., 822; *Felmet v. Canton,* 177 N. C., 52, 97 S. E., 728; *Durham v. Public Service Co.,* 182 N. C., 333, 109 S. E., 40, 42 S. Ct., 290, 261 U. S., 149, 67 L. Ed., 580; *Kinston v. R. R.,* 183 N. C., 14, 110 S. E., 645; *Tarboro v. Forbes,* 185 N. C., 59, 116 S. E., 81; *Gunter v. Sanford,* 186 N. C., 452, 120 S. E., 41; *Gastonia v. Cloninger,* 187 N. C., 765, 123 S. E., 76; *Comm. v. Epley,* 190 N. C., 672, 130 S. E., 497; *R. R. v. Ahoskie,* 192 N. C., 258, 134 S. E., 653; *Greensboro v. Bishop,* 197 N. C., 748, 150 S. E., 495.

(a) In Dillon's Commentaries, *supra,* treating of taxing power as exercised in the imposition of special assessments for local improvements, it is said, "Although taxation to create revenues to meet the general expenses of the government or municipality and special assessments to pay for local improvements have a common origin in the taxing power of the State, many features exist which distinguish such special assessments from taxes generally so called. Like general taxes, special assessments are enforced proportional contributions. . . . In a general levy of taxes the contribution is exacted in return for the general benefits of government; in special assessment the contribution is exacted because the property of the taxpayer is considered by the Legislature to be benefited over and beyond the general benefit of the community." Section 1430. And, the author continues, "The courts are very generally agreed that the authority to require the property specially benefited to bear the expense of local improvement is a branch of the taxing power, or included in it." Section 1431.

Also in the work of Page and Jones, *supra,* the authors say: "By the great weight of authority assessment of first class, that is, assessments which are to be justified upon the theory of benefits, are held to be referable to the power of taxation; and to be a special form of the exercise of that power." Section 89, Vol. 1, page 145. These authors

also point out "that by the great weight of authority a local assessment levied in return for the benefits conferred upon the property assessed by the improvement for which the assessment is levied is a kind of tax. The power to levy local assessments is said to be 'essentially a power to tax.' The power of levying a local tax is 'distinguishable from our general idea of a tax, but owes its origin to the same source or power.' This proposition means, primarily, that an assessment is an enforced contribution to a public object." Section 8, Vol. 1, page 13.

McQuillin, *supra,* speaking of the "nature of special assessment or taxation," states: "Local assessments or special taxes for the payment of the cost of certain kinds of public improvements commonly prevail and are generally sustained under the exercise of the power of taxation." Section 2165, Vol. 5 (2d), page 568. And again, "The foundation of the power to lay a special assessment or a special tax for a local improvement of any character . . . is the benefit which the object of the assessment or tax confers on the owner of the abutting property or the owners of property in the assessment or special taxation district which is different from the general benefit which the owners enjoy in common with other inhabitants or citizens of the municipal corporation." *Ibid.* Section 2166, page 573. And speaking of the power to levy assessments, the author states, "As a municipality is without inherent power to levy special assessments or taxes for local improvements, such power must originate by constitution, statute or charter. This power exists in the Legislature, or, it may be said that, primarily the State Legislature alone has power to provide for paying for local improvements by special assessments, and may be exercised directly or indirectly within the limits of the Constitution, and therefore it may be delegated to municipalities. . . . Thus the general proposition that the Legislature may delegate to local corporate authorities the power to provide for improvements and levy special assessments or taxes therefor on abutting property or property in a benefit district is generally sustained, provided the Constitution of the State does not restrict the right." Section 2170, Vol. 5, page 593.

In 25 Ruling Case Law, 85, these expressions are found: "Notwithstanding the distinctions made between local assessments and general taxes, the laying of special or local assessments is now generally recognized as an exercise of the taxing power, rather than the police power or the right of eminent domain." "The word 'taxes' in a broad sense includes special or local assessments on specific property benefited by a local improvement for the purpose of paying therefor." "A special assessment is taxation in the sense that it is a distribution of that which is originally a public burden growing out of an expenditure primarily for a public purpose."

And in 44 C. J., 481, Municipal Corporations, section 2807, the text reads: "It is very generally held that special assessments or special taxes to pay for local improvements are not taxes in the ordinary sense of the term. They are not taxes within the meaning of the term as generally understood in constitutional restrictions and exemptions. Nevertheless, it is equally well settled that the power to levy special assessments and taxes for local improvement is not an exercise of the power of eminent domain; that special assessments and special taxes are at least in the nature of a tax because they must be levied for a public purpose, and because they are enforced contributions on the property owner for the public benefit; that the levy thereof is an exercise of and referable to the taxing power, and an attribute of sovereignty . . ."

(b) The Supreme Court of the United States, speaking in regard to validity of assessments, expresses accordant view in *Spencer v. Merchant, supra*, where, in considering decision of Supreme Court of the State of New York, the Court said: "The power to tax belongs exclusively to the legislative branch of the government. . . . The Legislature, in the exercise of its power of taxation, has the right to direct the whole or a part of the expense of a public improvement, such as the laying out, grading or repairing of a street, to be assessed upon the owners of lands benefited thereby; and the determination of a territorial district which should be taxed for a local improvement is within the province of legislative discretion." Similar expressions are found in the *Bauman case, supra*.

(c) In this State this Court has repeatedly held that the right to assess for local improvements is referred to the power of taxation. In *Raleigh v. Peace* (1892), *supra, Shepherd, J.*, says: "The authority of the Legislature, either directly or through its local instrumentalities, to exercise the taxing power in the form of local or special assessments, has been so firmly established by judicial decision in this and other states of the Union that it can hardly, at this late day, be considered an open question." And, after calling upon authorities in support of this pronouncement, the Court continues, "And it is also to be observed that while they are taxes in a general sense, in that the authority to levy them must be derived from the Legislature, they are nevertheless not to be considered as taxes falling within the restraints imposed by Article V, section 3, of the Constitution, although the principle of uniformity governs both," citing *Cain v. Comrs., supra*, and other authorities.

In *Asheville v. Trust Co.* (1906), *supra, Connor, J.*, states: "The power to impose upon property the cost of public improvements, measured by the peculiar and special benefit sustained, has been settled beyond controversy. It is uniformly held that this power is based upon the right to tax, and not that of eminent domain." And after quoting from *Bauman v. Ross, supra*, and citing *Raleigh v. Peace, supra*, the opinion

continues, "It is equally well settled that 'assessments being a peculiar species of taxation, there must be a special authority of law for imposing them.'"

In *Tarboro v. Staton* (1911), *supra, Hoke, J.,* speaking of assessment for certain street improvements, says: "The right to make them as a general proposition is referred to the sovereign power of taxation, which is primarily, and as a rule exclusively, a legislative power."

In *Kinston v. R. R.* (1921), *supra, Hoke, J.,* again speaking for the Court, after observing that local assessments for public improvements are not regarded as a tax in the sense of a general revenue measure, and that the Court has several times held that the right to enforce them is referred to the power of taxation possessed and exercised by government, as quoted in the majority opinion, continues by saying immediately that "they have been frequently denominated and held to be a special tax, in transactions of the kind presented here."

And in *Gunter v. Sanford* (1923), *supra, Adams, J.,* after reviewing the authorities on the subject, says: "As we have heretofore indicated, the statutes prescribing the method of improving the streets of the town and regulating assessments against property are referred to the right of taxation, and the exercise of such right is not judicial but entirely legislative. The legislative authority is vested in the General Assembly (Const., Art. II, sec. 1), and counties and municipalities, as was said in *Jones v. Comrs.,* 137 N. C., 579, are regarded merely as agencies of the State for the convenience of local administration in certain portions of the State's territory, and in the exercise of ordinary governmental functions they are subject to almost unlimited legislative control, except when restricted by constitutional provision—a principle which has been consistently maintained in decisions of this Court."

And in *Comm. v. Epley* (1925), *supra,* the grant of power to levy drainage assessments is characterized as "this power to tax, which is the highest and most essential power of the government, an attribute of sovereignty and absolutely necessary for the existence of the drainage district . . ."

(d) The General Assembly of this State, in respect to collecting taxes, has declared that the words "tax" and "taxes" shall be construed to include in their meaning "any taxes, special assessments or costs, interest or penalties imposed upon property or polls," "unless such construction or definition would be manifestly inconsistent with or repugnant to the context." C. S., 7974, formerly Revisal, 2851. The definition, in substantial sameness, is included in the Machinery Act of 1939, chapter 310, Article I, section 2 (32).

Moreover, the General Assembly, in prescribing for collection of assessments levied under the Local Improvement Act, chapter 56, Public

Laws 1915, as amended, now Article 9, chapter 56, of the Consolidated Statutes of North Carolina, treats assessments as taxes are treated. In that article it is provided that assessments shall become due and payable on the date on which taxes are payable, and if not paid when due, they "shall be subject to the same penalties as are now prescribed for unpaid taxes, in addition to the interest" thereon, C. S., 2717, as amended, and that for assessment, not paid as therein prescribed, the property on which the assessment is levied "shall be sold by the municipality under the same rules, regulations, rights of redemption and savings as are now prescribed by law for the sale of land for unpaid taxes." C. S., 2716.

Furthermore, the statute pertaining to collection of unpaid municipal taxes, C. S., 2816, provides that "the officer who has charge of the collection of taxes in any city shall, in the collection of taxes be vested with the same power and authority as is given by the State to sheriffs for like purpose." And with respect thereto, the sheriffs are charged with the duty of selling land for delinquent taxes and issuing to the purchaser thereof a written certificate, C. S., 8024, which, if the municipality become the purchaser, can be foreclosed at its election in an action in the nature of an action to foreclose a mortgage under the provisions of C. S., 8037.

Also C. S., 7990, is expressly made available to the municipality to foreclose the lien of the assessment on the particular property, just as the lien of taxes on land are foreclosed.

In this connection it is also pertinent to note here: That while in the Machinery Act of 1939, chapter 310, Article XVII, entitled "Collection and Foreclosure of Taxes," certain changes are made in the then existing law pertaining thereto, it is provided in section 1723 of the Act, that all provisions of this article shall apply (1) to all taxes originally due within the fiscal year beginning on or after 1 July, 1939, (2) with certain exceptions, to all taxes uncollected at time of ratification of the article, originally due within the fiscal year beginning 1 July, 1938, (3) in certain designated respects, other than foreclosure of tax lien by action in nature of action to foreclose a mortgage, to all taxes, due and owing to taxing units at the time of the ratification of the article, originally due within the fiscal years beginning on or before 1 July, 1937; but (4) in respect to taxes originally due within fiscal years beginning on or before 1 July, 1937, the provisions for foreclosure, sections 1720 as to alternative method of foreclosure and subsections (a) to (j) of section 1719 pertaining to foreclosure of tax liens by action in nature of action to foreclose a mortgage, "shall be in addition to, but not in substitution for, the provisions of laws in force immediately prior to the ratification of this article"; that, except as in section 1723 provided, the collection and foreclosure of taxes originally due within fiscal years be-

ginning on or before 1 July, 1938, shall be under the provisions of law in force immediately prior to ratification of the article, including section 7990 of the Consolidated Statutes, which is specifically preserved in full force and effect as an alternative method for the foreclosure of taxes so originally due; and that a cause of action for the foreclosure of the lien of any special benefit assessment may be included in any complaint filed in actions brought under said section 1719, subsection (i).

Thus it appears that the text writers, the courts and the General Assembly have considered assessments fundamentally a species of taxes.

II. MUNICIPAL CORPORATIONS ACT IN SOVEREIGN CAPACITY IN LEVYING AND IN ENFORCING COLLECTION OF ASSESSMENTS IN DIRECT ACTION.

When a municipal corporation, to whom the General Assembly delegates the power to make public improvements, and to assess lands abutting thereon, or benefited thereby, for all or a part of the cost of the improvement, exercises such power, it acts as an agency of the State. *Jones v. Comrs.,* 137 N. C., 579, 50 S. E., 291; *Gunter v. Sanford, supra.* And, of necessity, the municipality acts in like manner when in direct action, under the provisions of C. S., 7990, formerly Revisal, 2866, it proceeds to enforce the assessment lien. Moreover, under the express provisions of C. S., 7990, not only a lien upon real estate for taxes, but an assessment lien upon same may be enforced thereunder by an action in the nature of an action to foreclose a mortgage, in which the court shall order a sale of the real estate. And the statute provides further that "when such lien is in favor of the State or county, or both, such action shall be prosecuted by and in the name of the county"; and "when the lien is in favor of any other municipal corporation the action shall be prosecuted by and in the name of such corporation."

Also in cases in which the provisions of C. S., 7990, are specifically invoked, and the question is considered, the decisions of this Court are uniform in holding that when a county or other municipal corporation proceeds under the provisions of C. S., 7990, to foreclose a tax lien, as distinguished from an action to foreclose a tax sale certificate under the provisions of C. S., 8037, which it may elect to do, it proceeds as a part of the State sovereignty, and there is no statutory bar. *New Hanover County v. Whiteman,* 190 N. C., 332, 129 S. E., 808; *Wilkes County v. Forester,* 204 N. C., 163, 167 S. E., 691; *Asheboro v. Morris,* 212 N. C., 331, 193 S. E., 424; *Charlotte v. Kavanaugh, supra.*

Moreover, the right of a drainage district to proceed in its own name and in sovereign capacity in the foreclosure of drainage assessments, under C. S., 7990, is recognized in the cases of *Drainage District v. Huffstetler,* 173 N. C., 523, 92 S. E., 368; *Comm. v. Epley, supra; Wilkin-*

*son v. Boomer,* 217 N. C., 217, 7 S. E. (2d), 491; *Nesbit v. Kafer,* 222 N. C., 48, 21 S. E. (2d), 903.

### III. The Maxim—Nullum Tempus Occurrit Regi—Subsists at Least in Respect to Taxes.

This maxim, that time does not bar the sovereign, "although originally a matter of royal prerogative, is now based upon the public policy of protecting the citizens of the State from the loss of public rights and revenues through the negligence of officers of the State." Headnote expressive of opinion in *Guaranty Trust Co. of New York v. United States,* 304 U. S., 126, 82 L. Ed., 1224. To like effect are pronouncements of the Supreme Court of the United States in *Gibson v. Chanteau,* 13 Wall. (80 U. S.), 92, 20 L. Ed., 534; *United States v. Nashville, C. & St. L. R. Co.,* 118 U. S., 120, 30 L. Ed., 81, 6 S. Ct., 1006; *United States v. Whited and Wheless,* 246 U. S., 552, 62 L. Ed., 879, 38 S. Ct., 367; *United States v. St. Paul, M. & M. R. Co.,* 247 U. S., 310, 62 L. Ed., 1130, 38 S. Ct., 525; *Bowers v. New York & Albany Lighterage Co.,* 273 U. S., 346, 71 L. Ed., 676, 47 S. Ct., 389.

The Court states in *United States v. Nashville, C. & St. L. R. Co., supra,* that "it is settled beyond doubt or controversy—upon the foundation of the great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided—that the United States, asserting rights vested in it as a sovereign government, is not bound by any statute of limitation, unless Congress has clearly manifested its intention that it should be so bound." Moreover, this Court in the case of *Avery County v. Braswell,* 215 N. C., 270, 1 S. E. (2d), 864, quotes with approval these expressions of the principle "the Government is not responsible for the laches or wrongful acts of its officers," *Waite, C. J.,* in *Hart v. United States,* 95 U. S., 316, 24 L. Ed., 479, and "the State is not ordinarily estopped by acts of misfeasance on the part of its officers." *Winslow, C. J.,* in *S. v. Pederson,* 135 Wis., 31, 114 N. W., 828.

Though there are to be found in decisions of this Court differences in opinion as to the extent to which this maxim is abrogated by our statute, C. S., 420 (formerly in reverse order, Revisal, sec. 375, the Code sec. 159 and C. C. P. sec. 38), the decisions are clear in holding that, in respect to taxes, the maxim is still the law in this State. *Wilmington v. Cronly,* 122 N. C., 383, 30 S. E., 9; *S. c.,* 122 N. C., 388, 30 S. E., 9; *R. R. v. Comrs.,* 82 N. C., 259; *Jones v. Arrington,* 94 N. C, 541; *Wilmington v. McDonald,* 133 N. C., 548, 45 S. E., 864; *New Hanover County v. Whiteman, supra; Shale Products Co. v. Cement Co.,* 200

N. C., 226, 156 S. E., 777; *Wilkes County v. Forester, supra; Logan v. Griffith,* 205 N. C., 580, 172 S. E., 348; *Asheboro v. Morris, supra; Charlotte v. Kavanaugh, supra.* Compare *Hospital v. Fountain,* 129 N. C., 90, 39 S. E., 734.

Numerous references to the subject appear in the reports. There is the statement in the case of *Furman v. Timberlake,* 93 N. C., 66, decided in 1885, that "the maxim is no longer in force in this State, having been abrogated by the provisions of The Code, sec. 159," now C. S., 420. Then in the first case of *Wilmington v. Cronly, supra,* decided in 1898, it is declared: "It needs no citation of authority to show that statutes of limitation never apply to the sovereign unless expressly named therein— *nullum tempus occurrit regi*—and the act in question . . . authorizing the State, county, or city to recover these delinquent taxes contains no limitation, and neither the ten years nor the three years statute applies." And in the second case of *Wilmington v. Cronly, supra* (1898), it is said: "No statute of limitation runs against the sovereign unless it is expressly named therein. This is immemorial law, based on reasons of public policy, which has been observed by all governments." Then in the case of *Threadgill v. Wadesboro,* 170 N. C., 641, 87 S. E., 521, decided in 1916, referring to Revisal, 375, now C. S., 420, and another statute relating to real estate, there is this observation: "Construing those sections, the Court has held that the maxim *nullum tempus occurrit regi* no longer obtains here, even in the case of collecting taxes, unless the statute applicable to or controlling the subject provided otherwise," citing the first case of *Wilmington v. Cronly, supra,* and *Furman v. Timberlake, supra.* And in the case of *Manning, Attorney-General of North Carolina, v. R. R.* (1924), 188 N. C., 648, 125 S. E., 555, referring to the provisions of C. S., 420, it is said: "The Court has construed this section to mean that the maxim has been abrogated and is not in force in this State unless the statute applicable to or controlling the subject otherwise provides," citing *Furman v. Timberlake, supra,* and *Threadgill v. Wadesboro, supra,* and indicates a challenge to the decision in the *Wilmington v. Cronly cases, supra.* However, it may be noted here that this statement in the *Manning case, supra,* is predicated on the statements in the *Furman* and *Threadgill cases,* as above quoted. But reference to the *Furman and Threadgill cases, supra,* shows that the question was not before the Court in either case. And even as a *dictum* the principle as there stated is challenged by other and later decisions. In fact, in the *Manning case, supra,* it is stated: "Whether a distinction may be found in the public policy of preserving the public revenues (in *Cronly cases, supra,* the collection of delinquent taxes), or in the statute controlling the subject, we need not decide." Following this, in the year 1925, the Court expressly held in *New Hanover County*

*v. Whiteman, supra,* that "statutes of limitation never apply to the sovereign, unless expressly named therein," and that *"nullum tempus occurrit regi* is a principle of government which still retains its ancient vigor in respect to taxes," citing *Wilmington v. Cronly, supra.* This ruling appears to have been adhered to in later cases above cited. *New Hanover County v. Whiteman, supra; Wilkes County v. Forester, supra; Asheboro v. Morris, supra;* and *Charlotte v. Kavanaugh, supra.* In the *Kavanaugh case, supra,* the all-inclusive statement appears that "The principle laid down and oft repeated in our decisions that 'no statute of limitations runs against the sovereign, unless it is expressly named therein,' is sound, and in the collection of taxes, levied as provided by law, this principle ought not to be abridged or proscribed." And in the instant case the majority opinion contains the pronouncement that the maxim "is still regarded as the expression of a sound principle of government applicable to actions to enforce the sovereign rights of the State"— and that "notwithstanding the inclusive provisions of sec. 420 of the Consolidated Statutes . . . it has been uniformly held that no statute of limitations runs against the State, unless it is expressly named therein." With this premise, we are in accord.

Moreover, it is well settled in decisions dealing with the subject that in principle and in practice counties, cities, towns and other municipal corporations come under the influence of the maxim when and to the extent that they are properly considered governmental agencies of the State, as and in so far as the maxim is preserved in this State. *Wilmington v. Cronly, supra* (two cases); *Wilmington v. McDonald, supra; Wilmington v. Moore,* 170 N. C., 52, 86 S. E., 775; *New Hanover County v. Whiteman, supra; Asheboro v. Morris, supra; Charlotte v. Kavanaugh, supra.* In the case of *Charlotte v. Kavanaugh, supra,* the Court states the principle conversely somewhat in this way—that statutes of limitation apply to the State and the political subdivisions thereof in actions "brought in the name of the State or for its benefit, or for the benefit of political subdivisions thereof, when the action is not brought in the capacity of its sovereignty." It is therein specifically stated that the "action was brought by the city of Charlotte in its capacity of sovereignty." And the present action is brought by the city of Raleigh in its sovereign capacity.

Again, in this Charlotte case, it is also said: "When an action is brought by the sovereign under section 7990 to collect a tax duly levied as provided by law, no statute of limitation applies."

In this connection, and in the light of the principle that statutes of limitation never apply to the sovereign, unless expressly named therein, the fact that it is provided that the lien of municipal taxes on real estate continues until the taxes are paid, C. S., 2815, and no such provision

appears as to the lien of assessments, C. S., 2713, is immaterial in an action instituted under C. S., 7990, by a municipality in its sovereign · capacity.

IV. PRIOR TO EFFECTIVE DATE, 19 MARCH, 1929, OF CHAPTER 331, PUBLIC LAWS 1929, IN WHICH C. S., 2717 (a), WAS ENACTED, NO STATUTE LIMITED THE TIME FOR COMMENCING ACTIONS UNDER C. S., 7990, TO FORECLOSE ASSESSMENT LIENS.

Neither the three-year statute of limitations, C. S., 441 (2), relating to actions upon liability created by statute, nor the ten-year statute, C. S., 437, relating to actions (1) upon judgments, or (3) for foreclosure of a mortgage, or deed in trust for creditors, on real property, nor the ten-year statute, C. S., 445, relating to actions for relief not otherwise provided for in the specific statutes, effective prior to 19 March, 1929, contains any reference to actions instituted in the name of the State, or of any of its governmental agencies to foreclose the lien of taxes or assessments for public improvements. And C. S., 7990, contains no limitation upon the commencing of actions thereunder. But it is to be noted in each of these cases, *Drainage District v. Huffstetler, supra; Morganton v. Avery,* 179 N. C., 551, 103 S. E., 138; *Slatesville v. Jenkins,* 199 N. C., 159, 154 S. E., 15; *High Point v. Clinard,* 204 N. C., 149, 167 S. E., 690; and *Farmville v. Paylor,* 208 N. C., 106, 179 S. E., 459, actions instituted in sovereign capacity on assessments for public improvements, either the three-year, C. S., 441 (2), or the ten-year statute of limitation, C. S., 437 (1), in which the sovereign is not expressly named, was considered applicable.

In this connection it is noted that: (1) In the *Drainage District case, supra,* decided in 1917, an action to foreclose a drainage assessment, the Court in an opinion by *Allen, J.,* held that the action "is not barred, as it falls within the statute of limitations barring action upon judgments within ten years, and the statute providing that an action on a liability created by statute shall be brought within three years has no application." (2) In the *Morganton case, supra,* decided in 1920, an action to enforce "a tax assessment or charge for paving certain sidewalks . . . under Private Laws 1885, chapter 61" as amended, the Court, *Brown, J.,* writing, without making any reference to the case of *Drainage District v. Huffstetler, supra,* held that the three-year statute of limitation, Revisal, 395 (2) (now C. S., 441 [2]), relating to actions upon liability created by statute, applies. (3) In the *Statesville case, supra,* decided in 1930, a controversy without action relating to assessment for street improvements made by the city under authority of its charter, in an opinion by *Clarkson, J.,* the case turned on the provisions of the charter—the Court

holding that no statute of limitations applied—*Stacy, C. J.,* dissenting, and *Brogden, J.,* concurring in dissent.    (4) In the *High Point case, supra,* decided in 1933, an action on street assessments, *Stacy, C. J.,* speaking for the Court, the decision turned on that in *Drainage District v. Huffstetler, supra.*    (5) And in the *Farmville case, supra,* decided in 1935, an action on paving assessments, in the opinion by *Schenck, J.,* it is stated that it is conceded the assessments are liens against lots of defendants "unless the cause of action is barred by the ten-year statute of limitation," citing "C. S., 437," and the *High Point case, supra.* However, the only point decided, and on which affirmance of judgment for plaintiff rests is "that the provision for the acceleration of the maturity of deferred installments upon default in payment of past-due installments is for the benefit of the creditor town, and is not self-operative, and that the town, upon default, may either institute fore-closure proceedings or may waive the acceleration provision without starting the running of the statute of limitations."

In review of these cases it is worthy to note that only in the *Morganton case, supra,* was the municipality denied recovery, and, patently, there is confusion in the decisions.    This is conceded in the case of *Charlotte v. Kavanaugh, supra,* and virtually so in the opinion of the majority in the present case.    Apparently this is due to the manner in which they have been presented, for the question as to the applicable-ness of the principle that "statutes of limitation never apply to the sovereign, unless expressly named therein," a principle upon which all hands now agree, was not considered and passed upon in the opinions rendered by this Court in any of them.    It is true, however, that in the briefs for plaintiffs in the *Statesville* and *High Point cases, supra,* attention was called to the principle.    Nevertheless, and in all these cases it appears to have been assumed that either the three-year statute of limitation, C. S., 441 (2) ; Revisal, 395 (2), or the ten-year statute, C. S., 437 (1) and (3) ; Revisal 391 (1) and (3), applies, and this without regard to the 1929 Act, C. S., 2717 (a), with respect to which no decision was made.    Hence, the decisions there are not controlling here (1) in the light of the principle that assessments are, in essential character, taxes, in the levying of which and in the enforcing of the lien thereof by direct action, authorized under C. S., 7990, the municipality acts in sovereign capacity ; and (2) in the light of the principle that no statute of limitation runs against the sovereign, unless expressly named therein.

On the other hand, in the case of *Asheboro v. Morris, supra,* the plaintiff contended that when an action was brought under C. S., 7990, the statute of limitation does not apply—the defendant having pleaded the three-year statute of limitation.    *Barnhill, J.,* speaking thereto, said:

"Where the sovereign elects or chooses to proceed under C. S., 7990, no statute of limitation is applicable," citing *Logan v. Griffith,* 205 N. C., 580, 172 S. E., 348; *New Hanover County v. Whiteman, supra.* And the trend of the decision in the case of *Charlotte v. Kavanaugh, supra,* is that prior to the 1929 Act, above referred to, there was no statute of limitation applicable to an action instituted under C. S., 7990, to foreclose the lien of assessments for public improvements. Moreover, in the present case, it is noted that the majority does not now contend that there was any such statute, prior to the enactment of the 1929 statute, C. S., 2717 (a).

V. THE PROVISIONS OF THE LOCAL IMPROVEMENT ACT OF 1915, CHAPTER 56 OF PUBLIC LAWS 1915, AS AMENDED, NOW ARTICLE 9 OF CHAPTER 56 OF CONSOLIDATED STATUTES, MANIFEST A PUBLIC POLICY.

In the Local Improvement Act the General Assembly formulated, and has set forth a State-wide public policy that every municipality in the State shall have power, by resolution of its governing body, upon petition of at least a majority of the owners, representing at least a majority of all the lineal feet of frontage of land abutting upon the street or part of a street proposed to be improved, to cause local improvements to be made on such street, or such part of a street, the cost of which, exclusive of specified items, to be apportioned and borne, one-half by local assessment upon abutting property, unless the petition shall request, and specify a larger proportion to be so assessed, to be apportioned on frontage basis, and to be a lien thereon superior to all other liens and encumbrances, and one-half, or less proportion in conformity with petition, by the municipality at large. "No land in the municipality," as expressly declared, "shall be exempt from local improvement." Authority is given for "Local Improvement Bonds" to be issued by the municipality to raise the amount and portions of the cost to be borne by the municipality, for the payment of the principal and interest of which a tax shall be levied upon all the taxable property in the municipality. Authority is also given for "Assessment Bonds" to be issued by the municipality to raise the amount and portion of the cost assessed upon the abutting property, and it is provided that the moneys collected from assessment shall be kept in a special fund and used only for the purpose of paying principal and interest of "Assessment Bonds" so issued. But, if for any cause, the fund on hand at time of any annual tax levy be insufficient to meet principal and interest on such bonds maturing in the year, the amount of deficiency shall be included in the tax levy on all taxable property in the municipality. Thus, street improvements, made under and pursuant to such provisions of the Local Improvement Act,

are public improvements, and the due enforcement of the lien of assessments therefor, is a right in which the public, that is, the taxpayers in general of the municipality, has an interest.

In view of this manifest State-wide public policy that at least one-half of the cost of a public improvement, within the meaning of the Act, shall be borne by the abutting property benefited thereby, the intent of the General Assembly, by subsequent act, to prescribe a bar to ultimate enforcement of assessments made pursuant to such policy, should be "expressed in terms too clear to admit of doubt." Unless and until the General Assembly enacts an applicable statute so expressed, the Court should not resort to interpretive construction to give such effect to any statute, and thereby shift to the municipality at large the burden of benefits which accrue to owners of particular property from a public improvement made in accordance with such public policy.

VI. STATUTES, ABROGATING RIGHTS IN WHICH THE PUBLIC IN GENERAL HAS AN INTEREST, ARE SUBJECT TO RULE OF STRICT CONSTRUCTION IN FAVOR OF THE SOVEREIGN.

This principle has been applied to exemption from taxation and assessment, as well as to statutes of limitation, including statutes of limitation as to collecting of taxes. (1) As applied to exemption from taxation see *R. R. v. Alsbrook,* 110 N. C., 137, 14 S. E., 652; affirmed on writ of error in 146 U. S., 279; *United Brethren v. Comrs.,* 115 N. C., 489, 20 S. E., 626; *Trustees v. Avery County,* 184 N. C., 469, 114 S. E., 696; *The Providence Bank v. Billings* (1830), 4 Peters, 514, 7 L. Ed., 939; *The Ohio Life Ins. & Fra. Co. v. Debolt* (1853), 18 How., 416, 14 L. Ed., 997; *Farrington v. Tennessee* (1877), 95 U. S., 79, 24 L. Ed., 558; *Vicksburg, S. & P. R. Co. v. Dennis,* 116 U. S., 665, 29 L. Ed., 770; *Yazoo & Mississippi Valley R. Co. v. Thomas* (1889), 132 U. S., 174, 33 L. Ed., 302; *R. R. Commission v. Los Angeles Ry. Co.* (1929), 280 U. S., 145, 74 L. Ed., 234; *Pacific Co. Ltd. v. Johnson* (1931), 285 U. S., 480, 76 L. Ed., 893; *Hale v. State Board of Assessments,* 302 U. S., 95, 82 L. Ed., 72; *New York Rapid Transit Co. v. New York* (1937), 303 U. S., 573, 82 L. Ed., 1024.

In the *Alsbrook case, supra,* the pertinent headnotes epitomizing the opinion of the Court, read: "1. The power of taxation being essential to the life of government, exemptions therefrom are regarded as in derogation of sovereign authority and common right, and will never be presumed. 2. The grant of an exemption from taxation must be expressed by words too plain to be mistaken; if a doubt arises as to the intent of the Legislature, that doubt must be resolved in favor of the State." In support of the decision there the Court cited, and quoted from several of the cases of the Supreme Court of the United States above cited.

In the *Billings case, supra, Chief Justice Marshall,* speaking for the Supreme Court of the United States, said: "That the taxing power is of vital importance; that it is essential to the existence of government are truths that it cannot be necessary to reaffirm . . . As a whole community is interested in retaining it undiminished, that community has a right to insist that its abandonment ought not to be presumed in a case in which the deliberate purpose of the State to abandon it does not appear . . . We must look for the exemption in the language of the instrument and, if we do not find it there, it would be going very far to insert it by construction."

In the *Debolt case, supra, Chief Justice Taney* expresses the principle in this way: "The rule of construction, in cases of this kind, has been settled by this Court. The grant of privileges and exemptions to a corporation (is) are strictly construed against the corporation and in favor of the public. Nothing passes but what is granted in clear and explicit terms. Neither the right of taxation nor any other power of sovereignty which the community have an interest in preserving undiminished, will be held by the Court to be surrendered, unless the intention to surrender is manifested by words too plain to be mistaken . . . Nor does the rule rest merely on the authority of adjudged cases. It is founded in principles of justice, and necessary for the safety and well-being of every State in the Union . . . If they come here to claim an exemption from their equal share of the public burden, or any such exemption or privilege they must show their title to it . . . and that title must be shown by plain and unequivocal language."

In the *Dennis case, supra,* after quoting the principle as declared in the *Billings case, supra,* and in another, *Gray, J.,* gives this review: "In subsequent decisions, the same rule has been strictly upheld and constantly reaffirmed in every variety of expression. It has been said that 'neither the right of taxation nor any other power of sovereignty will be held by this Court to have been surrendered, unless such surrender is expressed in terms too plain to be mistaken'; that exemption from taxation 'should never be assumed unless the language used is too clear to admit of doubt'; that 'nothing can be taken against the State by presumption or inference; the surrender when claimed must be shown by clear, unambiguous language, which will admit of no reasonable construction consistent with the reservation of the power; if a doubt arise as to the intent of the Legislature, that doubt must be resolved in favor of the State'; that a State 'cannot by ambiguous language be deprived of this highest attribute of sovereignty'; that any contract of exemption 'is to be rigidly scrutinized, and never permitted to extend either in scope or duration, beyond what the terms of the concession clearly require'; and that such exemptions are regarded 'as in derogation of

sovereign authority and of common right, and therefore not to be extended beyond the exact and express requirements of the grants, construed *strictissimi juris.'*"

And in the *New York case, supra, Reed, J.,* of the Court as it is now constituted, states that "More than a hundred years ago it was stated by *Chief Justice Marshall* in *Providence Bank v. Billings* . . . that the taxing power is of such 'vital importance' that we must look for the exemption in the language of the instrument; and if we do not find it there, it would be going very far to insert it by construction"; and that "at the present term, the Court has reiterated that contracts of tax exemption are 'to be read narrowly and strictly,'" *Cardoza* in *Hale v. State Board of Assessments, supra.* (2) This Court has applied the rule to exemptions claimed from assessments for street improvement in *Durham v. Public Service Co., supra.* In this case *Hoke, J.,* states the rule in this manner: "The power to impose these assessments for local improvements is properly referred to the sovereign power of taxation, and it is the accepted principle of interpretation that no license, permit or franchise from a municipal board or from the Legislature itself will be construed as establishing an exemption from the proper exercise of this power, or in derogation of it, unless the bodies are acting clearly within their authority and the grant itself is in terms so explicit as to be free from any substantial doubt," citing *R. R. v. Alsbrook, supra,* and other cases. (3) As to statutes of limitation, the Supreme Court of the United States has applied the rule of strict construction in favor of the government in many cases, among which are these: *United States v. Nashville, C. & St. L. R. Co., supra; United States v. Whited and Whelass, supra; United States v. St. Paul, M. & M. R. Co., supra; Dupont deNemours & Co. v. Davis,* 264 U. S., 456, 68 L. Ed., 788, 44 S. Ct., 364; *Bowers v. New York & Albany Lighterage Co., supra; Independent Coal & Coke Co. v. United States,* 274 U. S., 640, 71 L. Ed., 1270, 47 S. Ct., 714.

Moreover, the Circuit Court of Appeals, 8th Circuit, in the case of *United States v. Southern Lumber Co.,* 51 F. (2d), 956, 78 A. L. R., 619, in which writ of *certiorari* was denied, 284 U. S., 680, 76 L. Ed., 574, 52 S. Ct., 197, held that statutes limiting the time for collection of taxes are strictly construed in favor of the government.

See also *Asbury v. Albemarle,* 162 N. C., 247, 78 S. E., 146, 44 L. R. A. (N. S.), 1189, in which this Court held that "statutes in derogation of common rights or offering special privileges are to be construed liberally in favor of the public and strictly against those specially favored."

For further elaboration, see 3 Sutherland Statutory Construction (3d Ed. Horack), sec. 6301.

In the light of these principles we come to the final point.

VII. THE 1929 ACT, CHAPTER 331, SECTION 1, SUBSECTION (B), C. S.,
     2717 (a), IS NOT AN INDEPENDENT TEN-YEAR STATUTE OF LIMITA-
     TION, IMPOSING A LIMIT WHERE NONE EXISTED BEFORE, BUT IS
     MERELY AN AMENDATORY ACT APPLICABLE ONLY WHEN ANY
     PRIOR ACT PRESCRIBED A SHORTER PERIOD FOR COMMENCING
     ACTIONS TO ENFORCE SPECIAL ASSESSMENTS.

The majority opinion concedes that the 1929 "Act may be lacking in
that degree of precision ordinarily to be found in restrictive statutes."
That it is so, we are in accord.   But with the reasoning and conclusions
thereafter announced, we disagree.

In the first place, it is said by the majority that this Court has several
times considered the Act of 1929 "and construed it as prescribing a
limitation of ten years to a suit to foreclose the lien of an assessment for
local improvements."  This statement is challenged.  It was not so held
in *Statesville v. Jenkins, supra,* nor in *High Point v. Clinard, supra,*
nor in *Farmville v. Paylor, supra,* nor in any case cited by the majority
save and except the one case of *Charlotte v. Kavanaugh, supra.*  In the
*Statesville case, supra,* the statute was held to be inapplicable to the fac-
tual situation there in hand, and as stated hereinbefore the case turned
upon provisions of the city charter.  In the *High Point case, supra,* as in
the *Statesville case, supra,* it may have been assumed that the statute is a
statute of limitation, yet it was not so decided and as hereinbefore stated
the decision in the *High Point case, supra,* turned on that in the case
*Drainage District v. Huffstetler, supra,* decided in 1917.  Moreover, in
the *Farmville case, supra,* the 1929 statute is not mentioned anywhere.
In this *Farmville case, supra,* C. S., 437, and the *High Point case, supra,*
are cited as guide posts.  A decision is not an authority upon a question
not considered by the Court, though involved in a case decided.  See
*Durauseau v. U. S.,* Cranch, 307, 3 L. Ed., 232; *Buel v. VanNess,* 8
Wheaton, 312, 5 L. Ed., 624; *New v. Oklahoma,* 195 U. S., 252, 49
L. Ed., 182, and other cases cited in notes to 2 Digest, U. S. S. C. Re-
ports, L. Ed., 23-27.  Thus when the case of *Charlotte v. Kavanaugh,*
*supra,* came on for consideration the Court had made no decision upon
the effect of this statute.  In that case the 1929 statute was applied as
a ten-year statute of limitation.  The question now presented calls for
reconsideration of the decision there made.  The majority approves that
construction.  In arriving at that decision, the majority overturns the
policy of the State in construing a statute admittedly "lacking in that
degree of precision ordinarily to be found in restrictive statutes," and
proceeds in reverse to construe the 1929 Act liberally in favor of "those
specially favored" and strictly against "the public," rather than "liber-

ally in favor of the public and strictly against those specially favored."
*Asbury v. Albemarle, supra,* and other cases above cited.

The principal reason assigned for so overturning the policy of the
State in construing such statute is that "We think it may fairly be
gathered that it was the legislative purpose to provide the purchaser or
owner of real property in a city with some period of relief against an
ancient assessment . . . Statutes of repose are in the interest of the
security of titles." Thus the doctrine of fair play, equality of treatment
as between the benefited landowner and the general taxpayers, and the
inhibition against special privileges (N. C. Const., Art. I, section 7) are
to be subordinated to "the interest of the security of titles." We dis-
agree with the reasoning assigned and with the interpretation placed
upon the statute.

Reference to the 1929 Act discloses that it expressly amends chapter 56
of the Consolidated Statutes. The Act is so captioned, and section 1
reads: "That chapter fifty-six of the Consolidated Statutes of one thou-
sand nine hundred and nineteen be and the same is hereby amended as
follows: (a) By adding at the end of section two thousand seven hun-
dred seventeen of Consolidated Statutes the following . . . (b) By add-
ing next after section two thousand seven hundred seventeen of the
Consolidated Statutes a section as follows: '2717 (a) . . . (c) By in-
serting next after section two thousand seven hundred and twenty-two of
the Consolidated Statutes a section as follows: . . .' " The context of
the entire act clearly shows that the terms "in this chapter" and "under
this chapter" as used in the subsection under consideration, and the
term "by this chapter" as used in subsection (c) of the Act, refer to
chapter 56 of the Consolidated Statutes and not to the Act being enacted.
In this light it is clear that the clause "whether fixed by law especially
referred to in this chapter" means "whether fixed by law especially
referred to" in chapter 56 of the Consolidated Statutes, and not to the
Act being enacted, which in ordinary course of legislative procedure
would later become a chapter in the bound volume of 1929 Public Laws.
And in this connection it is noted that chapter 56 refers indirectly to
C. S., 8037, which prescribes a statute of limitation as to actions to fore-
close the lien of a tax sale certificate in that it provides (1) that after
the assessment roll is confirmed a copy of it shall be delivered to the tax
collector or officer charged with duty of collecting taxes, C. S., 2713,
and (2) that in the event of default in payment of the assessment
installments "such property shall be sold by the municipality under the
same rules, regulations, right of redemption or savings as are now pro-
vided by law for the sale of land for unpaid taxes." In the sale of land
for unpaid tax, the sheriff is charged with the duty of issuing to the
purchaser of the land a written tax sale certificate, C. S., 8024, effective

at that time, and the provisions of C. S., 8037, were open to the purchaser to bring an action in the nature of an action to foreclose a mortgage to foreclose the lien of the tax sale certificate. And in C. S., 8037, it is provided that every county or other municipal corporation shall have the right to foreclose for taxes under the provisions of this section, but that "no such actions by such corporations shall be barred by the lapse of time as is above provided in this section, or by the law for other actions, but only by the lapse of five years from the delivery of the certificate of sale or deed sought to be foreclosed." And it is argued that the words "or otherwise" used in the section, C. S., 2717 (a), could refer to private acts relating to the city of Rocky Mount. Public Laws 1907, chapter 209, as amended by Private Laws 1923, chapter 46. But in view of the fact that it is not clear what is the meaning of the clause, "whether fixed by law especially referred to in this chapter or otherwise," it is, in the language of *Chief Justice Marshall,* "going very far to insert it by construction." The section in framework reads, "No statute of limitation . . . shall bar the right of the municipality to enforce any remedy provided by law for the collection of unpaid assessments . . . save from and after ten years from default in the payment thereof . . ." Thus it is clear that the Act operates upon statutes of limitation, and not independently upon the commencing of actions as is usual in statutes of limitation. It is true that the caption to the section is "Sale of foreclosure for unpaid assessments barred in ten years." The majority, resorting to this heading of the section for light as to the intent of the General Assembly in enacting the statute, of necessity concedes that the meaning of the words used in the section is doubtful or ambiguous. As the heading is no part of the Act and cannot enlarge or confer powers, nor control the words of the Act, resort to it for aid in ascertaining the intention of the Legislature may not be had unless the words so used are doubtful or ambiguous. Thus the necessity of resorting to it to aid in ascertaining the intent of the General Assembly is in itself violative of the rule of strict construction, *strictissimi juris,* which is the proper rule to be applied to a statute in derogation of sovereign authority and of common right. *R. R. v. Alsbrook, supra; Yazoo & Mississippi Valley R. Co. v. Thomas, supra.* However, in any event, "Sale of foreclosure for unpaid assessments" might properly refer to a sale under judgment in an action to foreclose an assessment sale certificate under C. S., 8037. Thus the meaning of this heading itself is doubtful and ambiguous.

Hence, after full reconsideration, we are constrained to the view that the 1929 Act, section 2717 (a), is not an independent statute of limitation, and that there is no statutory bar to an action instituted by a municipality, under the provision of C. S., 7990, to foreclose the lien of assessments for public improvements. The fact that chapter 331, Public

Laws 1929, has been amended at several sessions of the General Assembly changing its terms as applicable to statutes of limitation affecting a number of cities, and in one instance an entire county, would seem to suggest a legislative interpretation accordant herewith, and not as importing a general statute of limitations within itself. Likewise, quite contrary to the view taken in the majority opinion, the fact that, at successive sessions in 1931 to 1943, the General Assembly passed acts pertaining to the extension of time of payment of installments of assessments, would tend to show that the 1929 Act was not intended to be an independent statute of limitation.

The case in hand comes to this: Landowners petition the city or municipality for local street or sidewalk improvements with the understanding that one-half the cost is to be assessed against the abutting properties. The property owners neglect to pay their assessments, and the city or municipality fails to enforce collections for a period of ten years. The statute of limitations is pleaded and the landowners take the special benefits and throw the total cost upon the general coffers of the city or municipality. Thus they take their cake and eat it too. The law is otherwise in respect to taxes, and so it ought to be in respect to local improvement assessments.

The present decision will transfer all local improvement assessments of more than ten years standing to the general taxpayers of the community. Those who have neglected to pay for the past ten years are rewarded for their delinquency by a release of their assessments, albeit the organic law inveighs against special privileges except in consideration of public services. N. C. Const., Art. I, section 7. To release the assessments in respect to a few, simply because they have failed to pay, is to accomplish by indirection that which may not be done directly. The final result is inequality of treatment. Special privilege is its essence. We dissent.